### GARRET T. B. FONDA *v.* JOHN B. BORST.

Before lands can be deemed fully dedicated so as to entitle purchasers to have a street opened to the width and extent mentioned in the map to which reference is made in their deed of conveyance, it must have been accepted by the public by a formal opening by the proper authorities, or inferentially, by user.

BROWN, J. The defendant, in the year 1835, was the owner of certain lands in a place now known as the village of Fonda. He caused them to be surveved and laid out into lots, with streets, alleys and squares, the lots being numbered from No. 1 up to No. 675. He caused also to be made a map, upon which were marked and delineated these lots, streets, squares and alleys, which he caused to be filed in the clerk's office of the county of Montgomery. He sold and conveyed to divers persons a number of these lots, including that now owned by the plaintiff; and in the deeds of conveyance he referred to and bounded such lots upon the streets so laid down and delineated on the map. 'Amongst the streets so designated was one called Park street, running nearly east and west through the whole plot; and another street called Broadway, running north and south nearly at right angles with Park street, and continuing from Park street to the Mohawk river at its southern termination. The defendant, on the first of April, 1840, conveyed, by deed in fee simple, lot No. 390 as laid down on the map, to one George W. Hatch. The title to this lot, by various mesne conveyances, became vested in the plaintiff in this action by deed from one Augustus L. George, to him in fee, dated June 8, 1858. This deed, as do all the others, describes the lot as No. 390, and known and distinguished on a map of the village of Fonda made by O. H. Lee, and filed in the clerk's office of Montgomery county. The street called Broadway has been for some time open, and is now open and in use as a public

highway from Prospect street, also laid down on such map, to the lands of the defendant which are on the south side of Park street. The distance from Park street to the Mohawk river, along Broadway, is one thousand feet, and the distance from Park street along the street called Broadway to the south-west corner of lot No. 390 is two hundred and eighty feet. Broadway is laid down upon the map one hundred feet wide, and there is no other way of access to lot No. 390 than across the lands of the plaintiff. The plaintiff, at the time of the commencement of this action, had never been in possesion of the lot 390. It was then in the possession of one Stearns, who occupied it, with twenty-five or thirty acres of other lands, for agricultural lands under the defendant or some former owner of lot 390. The land south of Park street, a part of the village plot on the map, including lot 390, were inclosed in one body together about the year 1837 or 1838 by the defendant, and had been under lease from him to Stearns for about twelve years, in two terms of five years each, and one term of two years, which expired in April, 1859. It was then let from April, 1859, to one Wasson for three years, who relinquished his claim to Stearns, who again occupied it until April, 1861, when he again took a lease for the main body of the lands. The plaintiff, when he took his deed, did not know the location of the lot, and never used it. Stearns did not occupy with his assent. The judge also found, as a fact in the case, that the defendant maintains a fence and gate across Broadway on the south side of Park street, and has neglected and refused to remove the same or open Broadway from Park street, as the same is laid down on the map.

The complaint prays for a judgment or decree that Broadway may be opened, as laid down upon the map, from the south side of Park street to the south-west corner of lot No. 390 to the width of one hundred feet. The judge at the Special Term made a decree in conformity with the prayer of the complaint, which was afterward affirmed at the General Term in the fourth district, and the defendant appealed to this court.

VOL. II.    7

The plaintiff having succeeded to the rights of Hatch, the defendant's grantee is plainly entitled to an easement or right of way, over and upon the street called Broadway, to the public highway. This result follows from the rule that when the grantor bounds the lands which he conveys, by roads, whether existing or to be made over the lands retained by him, the purchaser takes as an incident of the grant the right to the use of such roads. This is the rule with regard to rural property. So that whether the servitude which the plaintiff claims be a rural or an urban servitude, to this extent his claim could admit of no dispute. In regard to sales and conveyances of property in cities made with reference to maps in which streets are laid down and delineated, the rights of the grantees extend much further. Under certain circumstances, to which I will allude, they have the right not only to the way or passage but also to have the streets opened and maintained of the width described upon the map. It is said in some of the cases that there is an implied grant of the streets, and in others that the map becomes part and parcel of the deed of conveyance. But the principle upon which the right rests is that of dedication to the public for the uses of the street. This principle is held to apply whether the streets have been laid out by the public authorities or by the proprietors of the lands themselves. The adjudications upon the subject are mostly to be found in the reported cases for the assessment of the damages upon the opening of the streets for public use. The courts holding that, in view of such a clear and manifest intention by the donor to dedicate the land, and as he could use it for no other purposes, the damages to which he was entitled were merely nominal. In all these cases the rule is stated without any qualification, and in quoting from them, the fact that the public authorities were proceeding themselves to have the damages assessed and the street opened, was overlooked or little or no consequence attached to it. Before the land can be deemed fully dedicated so as to entitle the purchasers to have the street opened to the width and extent mentioned in the map, it must have been accepted by the public by

formally opening, as in the assessment cases referred to, or inferentially by user. This is the doctrine of the case of *Badeau* v. *Mead* (14 Barb. S. C., 328), as it is also that of *Holdane* v. *Trustees of the Village of Cold Spring* (21 N. Y., 474).

Judge Wright, in the opinion, says: "To complete the dedication of a highway, if there be no formal acceptance by the public authorities, the acceptance should be made out by common user as a highway of the land dedicated. If the way attempted to be dedicated is not susceptible of public use or passage and cannot become a highway, it is difficult to see how a mere use by the public can be any evidence of acceptance." The case which the learned judge had under consideration was that of a *cul de sac* and could not be used as a public thoroughfare. The case before us now resembles it in this particular. The public authorities of the village of Fonda never had signified their acceptance of the street called Broadway. They had not taken any proceedings to open it, and the public had not used it. It had been inclosed and used for cultivation since 1837 or 1838, the time the map was made and the street delineated upon it. It was under cultivation when Hatch obtained his deed.

Up to the time of the commencement of this action, the plaintiff had never been in possession of his lot, No. 390, but he walked to it once and climbed over the fence, and went upon it just before he commenced his action. There is a very sufficient reason why the public authorities did not accept and open the street, and why the public never used it. It was, at certain times of the year, incapable of public use, being overflowed by the waters of the Mohawk river. This overflow created an insurmountable obstacle to its use as a public street. For more than twenty years after the filing of the map, this proposed street has remained in a state of nature, unworked, untraveled and unused by any human being. Neither the plaintiff, nor any of those under whom he claims, has had occasion to go upon any part of it. If he or any of the other owners upon the street desire to have it accepted by the public authorities of the village of Fonda, and

opened and worked for public use, and he or they are willing
to bear their share of the burden of the improvement, it is
open to them to do so.  But, until it is accepted, either
formally or inferentially, if he has at all times the right of
passage over it, it is all he can demand.  If this right is
interrupted or impeded he has his common law action for
damages against those who obstruct him in the enjoyment of
this right.  He is not satisfied with that, but invokes the
equitable powers of the courts to open, under its judgment,
this unmade street, to the extent of one hundred feet wide,
when it will benefit no one, and there is every reason to
think the public and the public authorities will have nothing
to do with it.  The authorities cited by Mr. Justice POTTER,
in his dissenting opinion in the court below; *Van Bergen* v.
*Van Bergen* (3 Johns. Ch.; 282); *Attorney-General* v.
*Nichols* (16 Ves., 338); *Olmsted* v. *Loomis* (6 Barb. S. C.,
160 ; Story's Eq. Jur., 925), are to the effect that the Court
of Chancery does not interfere to prevent or to remove a
private nuisance unless erected to the prejudice or annoyance
of a right long previously enjoyed.  It must be a strong and
mischievous case of pressing necessity, or the right must
have been previously established at law, to entitle a party to
call to his aid the jurisdiction of the court.   The most that
the plaintiff can complain of is a private nuisance, from
which he has not suffered and can hardly suffer the slightest
prejudice.

The judgment of the General and Special Terms should
be reversed, and a new trial ordered, with costs to abide the
event.

WRIGHT, J. (dissenting).  The judge who tried the cause,
without a jury, found, in substance, these facts: In April,
1835, the defendant owned, in fee, a parcel of land in the
village of Fonda, bounded on the north by a street called
Park street, on a map of the village.  In June of that year,
he caused a survey and map to be made of the lands men-
tioned.  On the map, lots were laid out and numbered, from
No. 1 to 674 inclusive, and, also, certain streets and alleys

were delineated thereon, one of which was called Broadway, and ran from Prospect street, as delineated on the map of the village, in a southerly direction, through the lands plotted out, to the Mohawk river. About the 1st of April, 1840, the defendant sold and conveyed, in fee, the title to lot No. 390, as laid down on the map, to George W. Hatch, and, by several intermediate conveyances, the title to said lot was, at the time of the trial, vested in the plaintiff, who was entitled to the possession thereof. The street called Broadway (which was laid down on the map as 100 feet in width), has been opened and worked by the village authorities and used as a public highway down to the south side of Park street, and within two hundred and eighty feet of lot No. 390. The plaintiff's lot (No. 390) is bounded on three sides by the lands of the defendant, and on the west side by the street called Broadway, and there is no other way of access to such lot than across the defendant's lands. The defendant is now the owner, and has the title in fee of the whole premises mapped and laid out by him into village lots, in 1835, except lot No. 390 (owned by the plaintiff), and maintains a fence and gate across Broadway on the south side of Park street, and has neglected and refused to remove the same and to open Broadway from Park street, as laid down on the map.

I do not understand it to have been seriously questioned on the argument, that, upon these facts (and we can look only at the facts found by the judge at Special Term), a judgment declaring that the plaintiff, as against the defendant, was entitled to have the street called Broadway opened and unobstructed from his lot No. 390 northerly to Park street, to the extent and width laid down on the map, and enjoining the defendant from erecting and maintaining obstructions across the same, and especially maintaining the gate and fence at the intersection of Broadway with Park street, was right. Where the proprietor of lands surveys, maps and lays out such lands into lots (numbering them), with streets designated, named and put down on the map, and conveys the lots to purchasers with reference to the survey and map, as between him and a grantee of a lot bounded on one of the

designated streets, his conveyance is *per se* a dedication of the street to the use of his grantee, as a street. As between the grantor and grantee it is a street, which the latter has a right to use as such as soon as the conveyance is made to him. By force of the grant, an easement is attached to the land granted, which thereby becomes an appurtenant, viz.: a right of way on and over the strip designated as a street, for the use of the lot conveyed. If the convenient and free and entire use of the lot conveyed requires the street to be opened as designated on the map and referred to in the conveyance, then the grantee has the legal right, as against the grantor, to have it kept open. In this case it is conceded by the defendant's counsel that the defendant, by his conveyance of lot No. 390 to Hatch, in bounding it upon Broadway street, as laid down on his map, adopted such map, and the grantee and his assigns acquired a right of way over such street to the public highway, and the right to have it kept open; and, further, that Hatch, and those who succeed to his title, might, by injunction, prevent the defendant from interfering with such right of way over the contemplated street, and compel him to remove obstructions he has placed in the way. This is a virtual concession of the correctness of the judgment. All that it does is to declare the right of the plaintiff to have Broadway street opened and unobstructed to the extent marked and laid down on the map, and restrain the defendant from further obstructing it by maintaining the fence and gate across the same at its intersection with the public highway.

This may be in one aspect a hard case. The defendant's speculating enterprise proved, to a great extent, a failure. The village of Fonda did not expand into a city; and his plot of ground is now, and has been for a long time, used by him for agricultural purposes. But the hardness of the case cannot and should not change the rules and course of the law.

The judgment should be affirmed.

Judgment reversed.