CHARLES H. BARTLETT, *et als.*, appellants, *vs.* CITY OF BANGOR.

GILBERT ATWOOD, *et als.*, appellants, *vs.* SAME.

Penobscot.　Decided January 15, 1878.

*Damages.　Dedication.　Way.*

When land taken for a public way is already burdened with a private right of way and an incipient dedication to the public, the owner is entitled to no more than nominal damages.

When the owner of land within or near to a growing city or village divides it into streets and building lots, and makes a plan of the land, marking thereon the streets and lots, and then sells one or more of the lots by reference to the plan, he thereby annexes to each lot sold a right of way in the streets, which neither he nor his successors in title can interrupt or destroy.

The location or platting of streets by the owner of land, and the sale of building lots abutting upon such streets, constitute an incipient dedication of the streets to the public, which neither the owner nor his successors in title, can afterwards revoke, although the dedication does not become complete, so as to impose upon the municipality the burden of making or keeping the streets in repair, till they have been accepted by competent authority, or been used by the public for at least twenty years.

A *cul de sac* may become a public way by location or dedication as well as a street open at both ends.

ON AGREED STATEMENT.

APPEALS from decisions of the city council of Bangor, on the question of damages for laying out a street in extension of First street.

The proceedings are all admitted to be correct. The title of the appellants, as tenants in common, of the premises taken, is not called in question, except as hereinafter stated. All claim under the will of the late Wm. Emerson, who died in 1860. The premises were formerly the property of Isaac Davenport, and con-

stituted a part of the lot which contained in all nearly two hundred acres, bounded upon Penobscot river on the east, and extending back about one mile. While owned by him he caused the front part of the whole lot, extending back about half way to the rear line, to be laid out into house lots, with streets to accommodate, the streets being two extending back to the river, one on the northern side known as Union street; and the other very nearly through the centre of the lot, and known at first as Centre street, and afterwards as Cedar street. At right angles with these, and crossing the whole lot, were several streets known respectively as Pleasant, Summer, Main, First, Second, Third, Fourth and Fifth streets. A plan of the laying out was made by Z. Bradley, in 1829, (recorded July 20, 1849, in Penobscot registry of deeds, vol. second, page 21 and 22 of plans,) and sales of the lots immediately commenced; so that prior to 1850, the principal part of all the lots were sold lying between the river and Fifth street. Among the lots thus sold prior to 1850, were all the lots on First street except one, all the lots on both sides of said street south of Centre or Cedar street, and four of the lots north of Centre street being so sold to Wm. Emerson and Isaac Farrar in 1835; and Farrar in 1836, conveyed his part to Emerson. In 1850-'51, an extension of the lotting of the Davenport lands so as to embrace all the balance of the whole was made, and a plan of the whole dated March 24, 1851, was made, adopting the Bradley plan so far as it went, and the latter plan, (being known as Z. Bradley's, extended by Wm. Coombs) was recorded November 7, 1854, in said registry, vol. second, pages 33 and 34 of plans. On both plans, First street was laid down alike, and conforming with the location and laying out as adopted by the city in the proceedings appealed from in these cases.

Wm. Emerson having paid one-half the consideration for the purchase made in 1835, and being unable to pay the balance, was released from further payments, and reconveyed one-half the lots to the Davenport heirs, every alternate lot being reconveyed. In 1851, by deed dated May 7, delivered July 12, 1851, the Davenport heirs reconveyed to Emerson the lots which he had conveyed back to them lying south of Cedar street, so that he again

became owner of all the lots on both sides of that street, south of Cedar or Centre street, the lots on both sides of the same street, north of Cedar street being owned and occupied by different parties as they still are, the lots being most of them occupied as residences. First street, from Union street to Cedar or Centre street, was laid out and adopted by the city as a legal street in 1836, the laying out being· in accordance with the Bradley plan, and proceedings in 1835 and 1836, being made a part of the case.

In 1854, by deed, dated May 8, and delivered on twenty-fifth, the Davenport heirs conveyed by quitclaim deed to Emerson all their right, title and interest in and to First street, as laid down on the plan.

On April 13, 1875, proceedings were commenced to lay out First street from Cedar street southerly, and by due course of proceedings, the laying out was completed on May 13, 1875, and street established, the appellants being allowed one dollar damage for the taking of their land; and this appeal was thereupon taken.

It appeared by testimony introduced by appellants, that as early as 1835, and until opening of street in 1875, a fence was erected on the south side of Cedar street, extending continuously from the corner of Second street down to Main street ; thence down Main street to the Barker & Davis lot, crossing First street, and also enclosing that part of Davenport square which lies south and west of these lines, that part of Davenport square thus enclosed having been conveyed by the city to Emerson, deed dated May 8, 1856, the land enclosed being used as a pasture, also that there was a large gravel bank upon the lot thus enclosed, through which First street, as laid out in 1875, runs.

The plan makes a part of the case, and that part of them copied that lies east of Fifth street. All the lots conveyed by Davenport and by his heirs were conveyed by numbers, as laid down on plan.

Sometime after 1856, Emerson being then· the owner of all the Davenport land in the plot between Main and Second streets, south of Cedar street, excepting the lot at the corner of Second and Cedar streets, caused said plot to be relotted, and a street laid out through the centre thereof, from Main to Second streets, and said relotting was adopted in the map of the city of Bangor

made under the direction of the mayor and committee on streets, by order of the city council, in 1862, and then and now publicly exposed as the city plan in the city hall, and so much of said plan is to be copied as embraces the plot referred to and adjoining streets and lands.

A. W. Paine, called by defendants, testified, subject to objection, that he was agent for Davenport heirs since 1850, and has made all the sales since made of their lands in the city; also that he was appointed as special guardian to sell and convey the fractional shares belonging to the minor heirs; that soon after his appointment he sold the lots in 1851 to Emerson, as already detailed. Afterward, in 1854, Emerson desired to know the terms on which the heirs would convey or release their interest in First street, south of Cedar or Centre street. He remarked in substance that he owned all the lots on both sides of the street, and would like to have that. I told him the fee of the land was valueless, as every one who owned a lot on the plan had a right of way over it, and when the city saw fit to lay it out for a street, we could get no damage for it, but as there was a valuable gravel bank upon it, that was worth something, as we could work it until the city took the street. We finally agreed upon $100, as the price for which he should have the deeds, and the heirs and myself as guardian, executed the deeds already introduced. According to the rates at which the other lands were sold, the land embraced by the street would have been worth some $1000 or $2000. All the streets named above have been adopted by the city, and laid out according to the plan, except Union street, which slightly varies in its course from the plan. The fences spoken of were built after Emerson and Farrar first bought the land, and were never varied with any change of the title, thus remaining the same through all the changes of the title, the land being generally used as a pasture.

The cases submitted to the full court were whether upon so much of the foregoing statement and proof as is legally admissible, the appellants were entitled to more than nominal damage. If so, the cases were to be set down for hearing at *nisi;* otherwise the appeals to be dismissed with costs.

The following diagram is referred to in the opinion.

*F. A. Wilson & C. F. Woodard*, for the appellants.

*T. W. Vose*, city solicitor, for the defendants.

WALTON, J.   First street in the city of Bangor, as originally laid out, in 1829, by the then owner of the land, extended south-westerly from Union street to Cedar street, and across Cedar street into the adjoining territory, as indicated upon the diagram.

That portion of First street lying between Union and Cedar streets was laid out and accepted by the city in 1836.   That portion of it lying southwesterly of Cedar street was laid out and accepted by the city in 1875.   The only question is whether the owners of the land thus taken for the extension of First street, in 1875, are, under the circumstances stated in the report, entitled to more than nominal damages.   We think they are not.

When the owner of land within or near to a growing village or city divides it into streets and building lots, and makes a plan of the land thus divided, and then sells one or more of the lots, by reference to the plan, he thereby annexes to each lot sold a right of way in the streets, which neither he nor his successors in title

can afterwards interrupt or destroy. And we think reason and the weight of authority are in favor of holding that such a platting and selling of lots constitute an incipient dedication of the streets to the public, which the owner of the land cannot afterward revoke. The dedication is not complete, and will impose no burden upon the public, till the streets are accepted by competent authority, or the public has used them for at least twenty years. But so far as the owner of the land is concerned, such acts constitute a proposition to dedicate, which he cannot afterward withdraw. Platting alone will have no such effect; but platting and selling will. There are dicta to the contrary, but the later and better considered cases hold to this view.

" Having sold lots and bounded the purchasers by the street as it is laid down upon the map, he has adopted the map, and dedicated his land in the site of the street to the public use ; he could have intended nothing less by his deeds than a declaration that the street was, and, so far as he was concerned, should remain, a public highway." Judge Bronson, in the *Matter of 29th Street*, 1 Hill. 189, and *39th Street*, 1 Hill. 191. It is not important that the street has not been opened. *Matter of 32d Street*, 19 Wend. 128. And the right of way cannot be released by purchasers, because the public have a vested interest. *Wyman* v. *Mayor, etc. of New York*, 11 Wend, 486, 487.

" The general rule is that, where the owner of land in a city lays out a street through it and sells lots on each side of the street, the public have an easement of way or right of passage, although it may not become a public highway in the ordinary sense of that term until the dedication is accepted and the street adopted by the corporation ; and the grantees of the lots are entitled as purchasers to have the interval or space of ground left open forever as a street, and to the right of using the way for every purpose that may be usual and reasonable for the accommodation of the granted premises. Neither the city, nor the state, nor the grantor, can do any act to impair this right, or restrict the grantees in the enjoyment of it." Opinion of the court in *White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65.

" While a mere survey of land, by the owner, into lots, defin-

ing streets, squares, etc., will not, without a sale, amount to a dedication, yet, a sale of lots with reference to such plat, or describing lots as bounded by streets, will amount to an immediate and irrevocable dedication of the latter, binding upon both vendor and vendee. . . . As against the proprietor, a dedication of land for streets and highways may be complete without any acts of acceptance on the part of the public; but in order to charge the municipality or local district with the duty to repair, or to make it liable for injuries for suffering the street or highway to be or remain defective, there must be an acceptance of the dedication; and this acceptance must be by the proper or authorized local public authorities." 2 Dill. Mun. Corp. §§ 503–5, citing numerous authorities.

And such a right of way is not lost by mere non-use. An adverse use, such as placing upon the land buildings or other permanent obstructions to all possible travel over it, if acquiesced in for a sufficient length of time, might have that effect. But using the land for pasturage, or the growth of crops, or other purpose, which does not indicate an intention that it shall never be used as a street, will not have that effect. Such a use of the land is not adverse. It is seldom within the contemplation of the parties that all the streets marked upon a plan of a considerable extent of territory, or that the whole of any one of them, if of considerable length, shall be at once opened. And, until such time as the growth of the place requires them to be opened, the owner has a right to use the land for any of these temporary purposes. And such a use is not adverse, but according to strict right. It will not, therefore, bar the rights of the grantees, or the public, to have the streets opened, whenever, in the opinion of the public authorities, they are needed. Thus, the streets in South Boston were located and delineated upon a plan in 1803; and a portion of one of them (First street) was not ordered to be opened till 1851; and in the mean time those claiming title to the land, and for more than twenty-five years before the order was passed for opening the street, fenced it and openly and continuously used and occupied it, without interruption; and yet the court held that the right to have the street opened to the full extent laid down

upon the plan, was not thereby lost. The court said that the rights of the parties were such that it was impossible that there should be any adverse possession, until an official order was made that the street should be completed. *Henshaw* v. *Hunting*, 1 Gray, 203.

Nor will it make any difference that the street in question is a mere *cul de sac*—a street open at one end only. True, in *Holdane* v. *Cold Spring*, 23 Barb. 103, two of the three judges held that such a street could not be a highway. They based their decision on what they supposed to be the common law. But they were mistaken. It had been laid down by Lord Kenyon in *Rugby Charity* v. *Merryweather*, 11 East. 376, note, that a mere *cul de sac* might be a highway; that otherwise such places would be traps to catch trespassers. And in *Bateman* v. *Bluck*, 14 Eng. Law and Eq. 69, the question was fully considered, and the court held that it was no objection to a highway that it was a mere *cul de sac* and not a thoroughfare. And in *People* v. *Kingman*, 24 N. Y. 559, the court of appeals very pointedly condemned the decision in *Holdane* v. *Cold Spring*, 23 Barb. 103, and held that upon principle as well as authority, it is no objection to a highway, or public street, that it is a *cul de sac;* that public ways with an outlet at one end only, may and often do exist; that they are quite common in some parts of the country; that in many cities and villages there are short streets leading to ravines, and to cliffs, whence there can be no outlet, and where they must necessarily stop; that the same thing is true of streets running to unnavigable waters, or to points on the sea shore, where there cannot be a harbor or landing place; that in new settlements many of the public ways extending into the wilderness, have outlets at one end only. In fact, we cannot see why it should have ever been doubted that such roads and streets are as much public highways as roads and streets open at both ends.

And where one sells building lots by reference to a plan, the purchasers obtain an interest in all the streets marked upon it, and the right to have them converted into public streets as soon as the public authorities can be induced to do so. To the contrary is the decision in *Badeau* v. *Mead*, 14 Barb. 328. It was

there held that the purchasers obtain an interest in only so much of the streets as will enable them to reach the highway. And in the *Matter of* 29*th Street*, 1 Hill. 189, Judge Bronson said : "I do not mean to say that this dedication will extend to all the grantor's lands in the site of the street; but it will, I think, extend to all his lands in the same block ; or, in other words, to the next cross street or avenue on each side of the lots sold ; the parties must have contemplated an outlet both ways." But in the *Matter of Lewis Street*, 2 Wend. 472, the court held that such a conveyance carried with it an implied covenant that the purchaser should have an easement or right of way in the street, to the full extent of its dimensions. And in a recent case in Massachusetts, *Fox* v. *Union Sugar Refinery*, 109 Mass. 292, the court held that a conveyance of land bounded by a street not defined in the deed, but shown upon a plan therein referred to, estopped the grantor to deny the existence, not only of that street, but of all the connecting streets laid down on the same plan, as far as the grantor's land extended ; that where a plan is referred to in a deed, for a description of the estate conveyed, not only the courses and distances, but all other particulars, appearing upon the plan, are to be regarded as if they had been expressly recited in the deed. And Judge Dillon says the purchasers' rights extend to all the streets marked on the plan. 2 Dill. Munic. Corp. § 503, note, citing numerous authorities.

And it has been decided in this state, as well as other states, that when the owner of land makes a plan of it, delineating thereon a street, with building lots adjoining, and then sells one of these lots by a reference to the plan, he thereby secures to the purchaser a perpetual and indefeasible right of way in the street ; and that when the land thus already burdened with a perpetual and indefeasible right of private passage over it, is taken for a public street, the owner is entitled to no more than nominal damages. *Sutherland* v. *Jackson*, 32 Maine, 80. *Stetson* v. *Bangor*, 60 Maine, 313.

In fact, there is no reason for allowing him even nominal damages. Where there is nothing in the deed, nor upon the plan, showing the contrary, the presumption that the streets marked

upon the plan, are intended for public streets, as soon as the municipal authorities can be induced to locate and accept them as such, is as strong as that the grantee shall have a private right of way over them. If such is not the intention of the grantor, it is no hardship to require him to say so in his deed. And we find upon examination that the doctrine of nominal damages originated with respect to streets in the city of New York, where, by force of a statute to that effect, the fee in the streets vests in the city as soon as they are laid out and accepted as public ways. To compensate the owner for this worthless fee, it was considered necessary to allow him at least nominal damages. But where, as in this state, the owner is not divested of the fee when his land is taken for a public way, and the land taken is already incumbered by a perpetual and indefeasible right of private passage over it, there is no reason why he should be allowed even nominal damages. He gets his pay by the increased value of the adjoining land.

In the case now under consideration, it appears that First street in the city of Bangor, was originally marked upon a plan, by the then owner of the land, in 1829; that numerous building lots have since been sold abutting upon the street, and by reference to the plan for a description of them; that in 1836, a portion of the street was laid out and accepted as a public way; that in 1875, the remainder of it was so laid out and accepted; and that, for this latter location, the owners of the fee were allowed nominal damages. We think they are entitled to no more.

> *Appellants entitled to only nominal*
> *damages. Appeal dismissed with*
> *costs for respondents.*

APPLETON, C. J. DICKERSON, BARROWS, VIRGIN and PETERS, JJ., concurred.