Mahler and wife vs. Brumder.

Mahler and wife, Respondents, vs. Brumder, Appellant.

*January 31 — March 10, 1896.*

*Highways: Dedication: Plat: Acceptance: Revocation: Right of purchaser of lot to have streets kept open: Cul de sac: Nuisance: Equity.*

1. The owner of land in a city made a plat thereof, on which was designated a street named W. Place, connecting at its western end with a public street, but terminating at its eastern end on the land of such owner and not connecting with any other street. The city expressly refused to accept such plat, but the owner graded W. Place and sold lots fronting thereon. Afterwards, however, he and his grantees of the land abutting on the eastern third of W. Place treated such portion as private property, and were compelled by the city to pay assessments upon it as such for the opening and improvement of another street. Such eastern portion of W. Place was never used by the public as a highway, and had been fenced off from the western portion before the plaintiff acquired title (by mesne conveyances) to a lot fronting on the latter. *Held*, that such eastern portion of W. Place never became a public street, and that plaintiff had no right to remove said fence or to have it abated as a nuisance. Winslow and Marshall, JJ., dissent.

2. Special or peculiar damage, differing not merely in degree but in kind from that which is deemed common to all, must have been suffered in order to give a private party a right of action to abate a public nuisance.

3. Equity cannot be successfully invoked merely to inflict injury or damage on the defendant without securing any substantial right or benefit to the plaintiff.

Appeal from a judgment of the circuit court for Milwaukee county: Frank M. Fish, Judge. *Reversed.*

The facts are stated in the opinion.

For the appellant there was a brief by *Howard & Mallory*, and oral argument by *Samuel Howard.* They argued, among other things, that in order to create a dedication at common law there must be an intention to dedicate on the part of the owner and actual acceptance or user by the pub-

92  477
96  375

92  477
e107  476
107  478

92      477
s31 LRA  695
54 LRA 178n
54 LRA 910n
57 LRA 508n

lic for such a length of time that the public accommodation
and private right would be materially affected by a denial
or interruption of the enjoyment. 2 Dillon, Mun. Corp.
§ 628 *et seq.;*. *Gardiner v. Tisdale*, 2 Wis. 153; *Connehan v.*
*Ford*, 9 id. 240; *Tupper v. Huson*, 46 id. 646; *Trerice v.*
*Barteau*, 54 id. 99; *Eastland v. Fogo*, 66 id. 135; *State ex rel.*
*Lightfoot v. McCabe*, 74 id. 481; *Cunningham v. Hendricks*,
89 id. 632; *Benson v. St. Paul, M. & M. R. Co.* 64 N. W.
Rep. 393; *Holdane v. Cold Spring*, 21 N. Y. 474; *Niagara*
*Falls S. B. Co. v. Bachman*, 66 id. 261. If Van Valken-
burgh in the first place intended to dedicate this east 100
feet for a public street, he revoked his intention before there
was any acceptance whatever by the public, and deeded the
premises to Nunnemacher, and through him and his grant-
ees *Brumder* obtained his title. *Holdane v. Cold Spring*,
21 N. Y. 474; *Schmitt v. San Francisco*, 100 Cal. 302; *Chi-
cago v. Drexel*, 141 Ill. 89; *Field v. Manchester*, 32 Mich.
279; *White v. Smith*, 37 id. 291; *Cass Co. v. Banks*, 44 id.
467; *Buskirk v. Strickland*, 47 id. 389. The sale by Van
Valkenburgh of lots on both sides of the east 100 feet and
of the west 200 feet with reference to a plat which he made
showing a street 300 feet long, and the description of the
property in the deeds with reference to "Washington
Place," did not act as a dedication *in pais* of the whole 300
feet. *Hogue v. Albina*, 20 Oreg. 182. The defendant in this
action now owns all the property on both sides of the east
100 feet, besides the three-foot strip on the east end of the
same and the east 100 feet itself, and whatever right of way
there was in this east 100 feet has ceased to exist by reason of
the merger of the dominant and servient estate in him.
*Pearce v. McClenaghan*, 5 Rich. Law, 179. The plat which
Van Valkenburgh made was never recorded, and Washington
Place could not become a public street until it was properly
accepted. It was a mere private easement. It could only
become a street by an acceptance of a plat thereof by the

city of Milwaukee. *Fischer v. Laack,* 76 Wis. 313; *Niagara Falls S. B. Co. v. Bachman,* 66 N. Y. 261; *Oliver v. Pitman,* 98 Mass. 46; *Regan v. Boston G. L. Co.* 137 id. 37; *Dorman v. Bates Mfg. Co.* 82 Me. 438; *Holdane v. Cold Spring,* 21 N. Y. 479. The plaintiffs cannot maintain this action unless they can show some special injury peculiar to themselves. *Carpenter v. Mann,* 17 Wis. 155; *Williams v. Smith,* 22 id. 597; *Greene v. Nunnemacher,* 36 id. 50; *Larson v. Furlong,* 50 id. 687; *Clark v. C. & N. W. R. Co.* 70 id. 593; *Janesville v. Carpenter,* 77 id. 288; *Zettel v. West Bend,* 79 id. 316; *Kuehn v. Milwaukee,* 83 id. 583; Wood, Nuisances (2d ed.), 810.

For the respondents there was a brief by *Miller, Noyes, Miller & Wahl,* and oral argument by *Geo. H. Wahl.*

CASSODAY, C. J. Grand avenue runs east and west in Milwaukee. The next street north of it is Wells street, which is parallel with Grand avenue and 486 feet from it. Washington avenue (now Twenty-Seventh street) runs north and south, and crosses those two streets at right angles. In 1883 Van Valkenburgh became the owner of all the land between Wells street and Grand avenue, from Washington avenue east for a distance of a little more than 385 feet. The land was then open and unplatted. Thereupon Van Valkenburgh platted the same with lots fronting on Grand avenue, Washington avenue and Wells street. There was also designated upon the plat a street or roadway forty-six feet wide, and running east from the east line of Washington avenue 300 feet, and named thereon "Washington Place." The north line of "Washington Place," so called, was and is 210 feet south of the south line of Wells street, and the south line of "Washington Place" was and is 230 feet north of the north line of Grand avenue, and several lots fronted on "Washington Place" from either side of it; but that plat did not mention nor refer to Twenty-Sixth street, which was not then in

existence and was not established nor laid out until several years afterwards. Van Valkenburgh thereupon submitted such plat to the common council of the city for acceptance, but they declined to accept the same, and notified him to that effect. Nevertheless, he graded and graveled the street, and put in gutters and wooden curbing and plank sidewalks, and sold lots fronting thereon. April 12, 1894, the plaintiff *Mrs. Mahler* acquired title to one of the lots fronting thereon through several mesne conveyances, the first being a deed from Van Valkenburgh to Murray, June 21, 1884, each and all of which deeds described the land as commencing at a point on the north line of "Washington Place," 130 feet east of the east line of Washington avenue; thence east, along said north line of "Washington Place," 40 feet, to a point; thence north 105 feet, to a point; thence west 40 feet, to a point; thence south 105 feet, to place of beginning. November 18, 1889, the city resolved to open Twenty-Sixth street, and for that purpose Van Valkenburgh conveyed that portion thereof east of the defendant's premises, hereinafter described, to the city July 12, 1892.

Some time prior to the acts complained of, the defendant acquired title, derived from Van Valkenburgh in 1884 and 1886, through several mesne conveyances, to two lots, each fronting on the east 100 feet of "Washington Place," and each running back therefrom 105 feet, and also acquired title, derived from Van Valkenburgh May 23, 1887, through several mesne conveyances, to the east one-third of "Washington Place," — being that portion of "Washington Place" between the two lots he acquired as above mentioned, and also a strip three feet wide and 256 feet long between said lots and "Washington Place" on the west, and Twenty-Sixth street on the east. The plaintiffs concede that, before they obtained their lot in question, there was a wire fence entirely across "Washington Place," 200 feet east of Washington avenue, and parallel with that avenue, being thirty feet east

of the east line of the plaintiffs' lot; that, after they acquired such title as indicated, they tore down that wire fence; that some time afterwards the defendant caused a second fence to be built on the same line where the wire fence had stood, and which last fence was constructed of heavy plank, cedar posts, and clapboards, which last fence the plaintiffs cut down and removed; that two weeks afterwards the defendant rebuilt the same upon the same line and of similar materials; that thereupon, and on November 5, 1894, the plaintiffs commenced this action in equity to abate and remove said fence as a nuisance, and to enjoin and restrain the defendant from constructing and maintaining such fence.

The defendant answered by way of admissions, denials, and counter allegations to some of the facts as stated and others to be stated. At the close of the trial, the court found, in effect, some of the facts stated, and also, in effect, that "Washington Place," and the whole thereof, was a public road or highway, and that such fence was a nuisance therein, and ordered judgment abating the same and perpetually enjoining the defendant from constructing or maintaining such fence. From the judgment entered thereon accordingly the defendant brings this appeal.

1. The finding of the trial court to the effect that that portion of " Washington Place " east of the fence mentioned had been a public road or highway ever since 1883, is contrary to the undisputed evidence. As indicated, the city, in 1883, expressly refused to accept the plat with " Washington Place" designated thereon as a street. There is no claim or pretense that " Washington Place," so designated on that plat, extended east to any street or roadway, public or private. On the contrary, it is undisputed that its east end, as designated on that plat, terminated on lands then owned wholly by Van Valkenburgh, and that his land extended still further east for a distance of more than eighty-

five feet.   So it is undisputed that, for nearly seven years prior to the time when the plaintiffs obtained their lot, Van Valkenburgh and his grantees of the land abutting upon that portion of "Washington Place" east of the line where the fence is so located, by conveyances and otherwise, treated that portion of "Washington Place" as private property, to which neither the public nor any other parties or persons had any right, title, or interest; and the city not only refused to accept the same as a public road or street, as mentioned, but compelled the owners thereof to pay assessments thereon as private property for opening, grading, and improving Twenty-Sixth street; and there is no evidence that that portion of "Washington Place" east of the line of that fence was used by the public during any portion of such seven years as a road or street, public or private.   The law is well settled that, to constitute a public street or highway by dedication, there must not only be an absolute dedication,— a setting apart and a surrender to the public use of the land by the proprietors,— but there must be an acceptance and a formal opening thereof by the proper authorities, or a user which is equivalent to such acceptance and opening.   *Holdane v. Cold Spring,* 21 N. Y. 474; *Fonda v. Borst,* 2 Keyes, 48; *Niagara Falls S. B. Co. v. Bachman,* 66 N. Y. 261; *People v. Underhill,* 144 N. Y. 324; *Connehan v. Ford,* 9 Wis. 240; *Hanson v. Taylor,* 23 Wis. 547; *Eastland v. Fogo,* 66 Wis. 133.   Obviously, there was no such acceptance or user; and hence it was competent for the proprietors and abutting owners to revoke the same, and they did revoke the same. *Holdane v. Cold Spring,* 21 N. Y. 474.   We must hold that the portion of "Washington Place" upon which such fence was located never became a public road or street, nor did any portion thereof east of the line where that fence was located become such public road or street.

2. As to the portion of "Washington Place" west of the line of that fence, it may be otherwise.   It appears that in

1891 and 1892 Van Valkenburgh obtained certain adjudica-
tions to the effect that certain tax certificates on that por-
tion of "Washington Place" west of the fence were void,
for the reason that the same was a public road or street and
hence exempt from taxation. Since that portion of "Wash-
ington Place" opened directly upon the public avenue at its
west end, it may be that, under the authorities, it was not
precluded from being a public street or road by the mere
fact that it was and is a *cul de sac*. *Moll v. Benckler*, 30 Wis.
584; *Schatz v. Pfeil*, 56 Wis. 429; *Moore v. Roberts*, 64 Wis.
538; *People ex rel. Williams v. Kingman*, 24 N. Y. 559; El-
liott, Roads & S. 1, and cases there cited. Assuming that
that portion of "Washington Place" west of the fence is a
public road or street, yet that would not make the fence a
public nuisance; and, even if it were, still that would not
give the plaintiffs, as private citizens, a right of action to
abate the same, for it is well settled that, to entitle a private
party to maintain an action to abate a public nuisance, it
must appear that he has suffered some special or peculiar
damage, differing not merely in degree but in kind from
that which is deemed common to all. *Zettel v. West Bend,*
79 Wis. 316; *Hay v. Weber*, 79 Wis. 591; *Evans v. C., St. P.,
M. & O. R. Co.* 86 Wis. 603. Such being the law, it is ob-
vious that the right of the plaintiffs to maintain this private
action is no greater nor less by reason of "Washington
Place" in front of their lot being regarded as a public road
or street, or merely as a private road or street. In other
words, the only ground upon which the plaintiffs can expect
to maintain this action, if at all, is that, as owners of the lot
mentioned, the fence is as to them a private nuisance.

3. It must be admitted that the only rights the plaintiffs
have in or upon "Washington Place," differing in kind from
the rights of the public, they acquired under and by virtue
of the deed of the lot which they received April 12, 1894.
That deed, like the deed from Van Valkenburgh to Murray

of the same lot, ten years before, and all intervening deeds, described the lot by metes and bounds, and located the south line of the lot as running along and upon the north line of "Washington Place;" and yet, by reason of Van Valkenburgh's plat, recognized in the deeds, it may be, and for the purposes of this case we assume, what is most favorable to the plaintiffs, that, under the adjudications of this court, their lot extends to the center of "Washington Place." *Pettibone v. Hamilton*, 40 Wis. 402; *Norcross v. Griffiths*, 65 Wis. 599. Such rights of the plaintiffs, having been acquired by the deed, are necessarily measured by the language of the deed. Goddard, Easem. (Bennett's ed.), 314; *Comstock v. Van Deusen*, 5 Pick. 163; *Miller v. Washburn*, 117 Mass. 371; *Fischer v. Laack*, 76 Wis. 313. Since the deed recognizes the plat, it must be construed with reference to the plat. *Ibid.*

In the case at bar there was no covenant or agreement in any of such deeds, or at all, that "Washington Place" or any part of it should remain open for the use or benefit of such grantee, or at all; and our statute, unlike the law in some states, expressly declares that "no covenant shall be implied in any conveyance of real estate, whether such conveyance contain special covenants or not." Sec. 2204, R. S.; *Ferguson v. Mason*, 60 Wis. 383. The rights of the plaintiffs are based upon the grant with reference to such plat, and nothing more. "When an incorporeal right of such a nature is created by grant," says a learned author, "the question whether it is or is not appurtenant to land depends upon the nature of the right and the intention of the parties creating it. In order to make such a right appurtenant to land, the right must be in its nature an appropriate and necessary adjunct of the land conveyed, having in view the purposes for which the land is conveyed; and the conveyance must show the parties intended the right to be made appurtenant to the land conveyed." Washb. Easem.

(4th ed.), 8, 9.  "Nothing will pass as an easement to a dominant estate, although it may have been used with it, unless a right thus to use it has become consummate, and thereby made appurtenant to the granted premises, or is expressly mentioned in the deed conveying the same as an easement intended to be conveyed thereby." *Id.* 41.  Another learned author is equally explicit: "A right of way appurtenant to a dominant tenement can be used *only* for the purpose of passing to or from that tenement.  It cannot be used even by the dominant owner for any purpose unconnected with the enjoyment of the dominant tenement; neither can it be assigned by him to a stranger, and so be made a right in gross; nor can he license a stranger to use the way when he is not coming to or from the dominant tenement."  Goddard, Easem. 321; *Ackroyd v. Smith,* 70 Eng. C. L. 164; *Thorpe v. Brumfitt,* 8 Ch. App. 650.  A right not connected with the enjoyment or use of a parcel of land granted cannot be annexed as an incident to that land, so as to become appurtenant to it. *Linthicum v. Ray,* 9 Wall. 241.  "A thing is appurtenant to something else," said FIELD, J., "*only* when it stands in the relation of an incident to a principal, and is *necessarily* connected with the use and enjoyment of the latter." *Humphreys v. McKissock,* 140 U. S. 313, 314.

Upon the principles stated, the plaintiffs, under and by virtue of their deed of the lot mentioned, and as incident to the grant, acquired the right to use "Washington Place" so far as the same was appurtenant to their lot, and to freely pass over the same to and from their lot and the public avenue on the west; and this right included the right of all persons having occasion to go to or from the premises of the plaintiffs.  This is equally true of those owning lots abutting upon "Washington Place" east of the plaintiffs' lot, as well as such abutting owners south and west of their lot.  But, as indicated, such rights of the plaintiffs did not,

Mahler and wife vs. Brumder.

under the facts and circumstances stated, give them any right to remove the fence mentioned, nor to break into the defendant's premises on land not appurtenant to their lot. Had "Washington Place," as originally platted, connected with any public street or roadway on the east, a different question would have been presented. The views expressed are abundantly supported by authority as well as reason. *Badeau v. Mead,* 14 Barb. 328; *Cox v. James,* 59 Barb. 144, 157; *S. C.,* affirmed, 45 N. Y. 557; *Speir v. New Utrecht,* 121 N. Y. 429; *People v. Underhill,* 144 N. Y. 316; *Langmaid v. Higgins,* 129 Mass. 353; *Pearson v. Allen,* 151 Mass. 79.

4. Besides, the case is not one calling for equitable interference. Equity should not be successfully invoked merely to inflict injury or damage to the defendant, without securing any substantial right or benefit to the plaintiff. *Attorney General v. Nichol,* 16 Ves. 338; *Mississippi & M. R. Co. v. Ward,* 2 Black, 485.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint.

Winslow, J. There are a few well-established legal principles which seem to me to call for affirmance of this judgment. These principles I shall briefly state: (1) It is now well settled that a *cul de sac* may be a highway. Elliott, Roads & S. 1, and authorities cited; *Bartlett v. Bangor,* 67 Me. 460; *Schatz v. Pfeil,* 56 Wis. 429. (2) When a landowner surveys and plats land and sells lots with reference to such plat (as here), there results an immediate and irrevocable dedication of the streets marked on the plat, which is binding on both vendor and vendee. 2 Dillon, Mun. Corp. (3d ed.), § 640, and authorities cited in note 2; *Donohoo v. Murray,* 62 Wis. 100, citing and approving *Bartlett v. Bangor, supra.* (3) The purchaser's right extends to have *all the streets* remain open which were marked on the plat, and he

may enforce such right.  2 Dillon, Mun. Corp, *supra;* Elliott, Roads & S. 112, and cases cited in note.  (4) This right is based upon the principle of estoppel, and not upon the doctrine of grant or covenant.  The grantor is estopped from denying the existence of the indicated ways, because it is presumed that the indicated ways add value to the lots, and that the purchaser paid such added value.  Elliott, Roads & S. 113.  (5) This right extends equally to a way which is a *cul de sac.*  The purchaser has the right to have the entire *cul de sac* kept open, and not merely that part which is necessary for his use in reaching some other highway.  *Thomas v. Poole,* 7 Gray, 83; *Rodgers v. Parker,* 9 Gray, 445; *Fox v. Union S. Refinery,* 109 Mass. 292.  (6) The enjoyment of such a right will be protected by injunction.  2 Story, Eq. Jur. (12th ed.), §§ 926, 927.  Believing these propositions to be unassailable, I cannot agree with the conclusion reached on this case.

MARSHALL, J.  I concur in the foregoing dissenting opinion by Mr. Justice WINSLOW.