# WATSON v. CARVER.

HIGHWAYS; DEDICATION; SUBDIVISION OF LOTS; ESTOPPEL.

1. To constitute a public street or highway by dedication, there must be not only an absolute dedication,—the setting apart and surrender to the public use of the land by the proprietors,—but there must be an acceptance and a formal opening thereof by the proper authority, or a user which is equivalent to such acceptance and opening.
2. There can be no valid statutory dedication of an alley, where an essential provision of a statute is not complied with.
3. The admission to record of a subdivision of one lot into three, with a 5-foot alley at the rear, is not an acceptance of the alley as a public way by dedication, where, at the time, a municipal order, passed in conformity with a statute, is in force, requiring public alleys to be not less than 10 feet in width.
4. Where the owner of lots containing sheds encroaching upon a 5-foot alley in the rear of the lots conveys one of the lots, with its improvements, easements, and appurtenances, he is thereafter estopped from maintaining a suit to compel the purchaser to remove so much of his shed as encroaches upon the alley; and such estoppel runs against his grantee of one of the other lots,—especially if, when the latter purchased his lot, he saw the shed on the other lot, and knew it extended over the alley, and made no effort to learn what rights its owner claimed. (Following *Frizzell* v. *Murphy*, 19 App. D. C. 440.)

No. 1645. Submitted April 6, 1906. Decided May 21, 1906.

HEARING on an apppeal from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity seeking to compel the removal of an alleged obstruction on a public alley. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree dismissing a bill of com-

plaint filed by appellant, Lewis L. Watson, whereby he sought to have the appellee, Howard M. Carver, remove a shed from an alleged public alley in the city of Washington, the use of which alley was averred to be necessary for the full enjoyment of appellant's property.

The parties to this appeal are owners of adjoining lots, and derive their title from a common source. One Caldwell in 1897, being then the owner of lot 14, in square 882, filed in the office of the commissioners of the District of Columbia a proposed subdivision into three lots, which became known as Nos. 32, 33, and 34, with a proposed alley 5 feet wide, at the rear. The plat was admitted to record in the office [of the surveyor] of the District of Columbia under date of July 7, 1897. On the following November, Caldwell conveyed the lots in question, together with all the improvements, ways, easements, rights, privileges, appurtenances, and hereditaments to the same belonging or in anywise appertaining," to one Atchison, who under a permit issued December 1, 1897, commenced the erection of three houses, one upon each of the lots. On April 1, 1898, Atchison conveyed lot 32, which was the corner one, "together with all and singular the improvements, ways, easements, rights, privileges, and appurtenances to the same belonging or in anywise appertaining," to the appellee Carver. At that time a house and shed had been erected on the lot, the latter having been built at the request of appellee, who was a produce dealer, for the shelter of his horse and wagon. It seems that the shed extended onto the proposed alley, although appellee did not know it at the time it was built or when he purchased. The partial location of the shed on the proposed alley is the cause of this controversy.

Subsequent to the sale of lot 32 to the appellee, and by deed dated February 8, 1900, Atchison sold lot No. 33 to the appellant. Prior to that date, and on July 20, 1899, Atchison had written to the District commissioners stating that he had built the three houses, and that by mistake of his carpenter the sheds had been built upon the alley, and asking them to compel the appellee, to whom he had sold one lot, to remove the shed. On August 3, 1899, the secretary to the commissioners, under

their direction, notified Atchison that the alley was not a public alley, and that they were without power. A second attempt was made by Atchison a few days later, which met with the same fate. Later on, in November, 1900, the matter was referred to the attorney for the District, who reported to the commissioners that the alley was not a public alley, was of no public use, and said that Atchison, "the only one of the public directly interested therein, seems to have ignored it and to have built upon it, and the appeal now made comes with very bad grace from him." It further appears that under an act of Congress approved August 27, 1888, it was provided that all spaces on any duly recorded plat of land thereon designated as streets, avenues, or alleys should become public ways, provided they conformed to the provisions of section 1 of the act. That section gave to the District commissioners authority to make and publish general orders necessary to regulate the platting and subdividing of lands. Being vested with such authority the commissioners in December, 1888, made certain general orders relative to alleys. By them it was provided that "no public alley in the city of Washington or Georgetown shall be less than 10 feet in width."

The testimony of the appellant shows that before he bought his house and lot from Atchison he inspected the property, and was told by Atchison that the sheds on the lots were partly built on the alley. He thereafter bought the house and lot, Atchison agreeing to have the sheds removed from the alley. Such was the situation relative to the sheds and the alley when appellant acquired his title. Something more than a year after, an effort was made by one Bradley, holder of a trust note on lots 33 and 34, to have the sheds removed. On June 18, 1901, the secretary of the District replied that the alley was not a public alley. Appellant also in 1901 asked the commissioners to open the alley, and received a similar answer. On April 7, 1903, the commissioners confirmed the acceptance of the 5-foot alley, and ordered the removal of all obstructions. Thereafter, the appellant refusing or neglecting to remove the shed he was arrested and tried in the police court upon the charge

of obstructing the alley, but he was acquitted on the ground that the alley was not a public alley.

The testimony of the man who built the stable shows that the measurements were made by Atchison, who was down there, off and on, while the stables and sheds were being erected. Appellee testified that he did not know that the stable covered any part of the alleged alley, and that Atchison told him that if the owner of the adjoining property gave 5 feet there would be a 10-foot alley, otherwise there would be no alley; also that it made no difference to him whether there was an alley, because he had the corner house.

On February 3, 1905, prior to the commencement of this suit, Caldwell, who subdivided the original lot 14, conveyed to appellee all his right, title, and interest to said lot 14 to the appellee. These are substantially the facts material to the case.

The relief prayed by the bill is that defendant be perpetually enjoined from obstructing any part of the alleged alley, or that he be required to remove all obstructions in the alley at the rear of the lot 32, owned by him.

*Mr. Joseph H. Stewart* for the appellant.

*Mr. Arthur Peter* for the appellee.

Mr. Justice DUELL delivered the opinion of the Court:

The question presented by the appeal, and which we are called upon to determine, is whether the court below erred in dismissing the bill of complaint.

It is strenuously urged that the recording of the subdivision of original lot 14 in the office of the surveyor of the District of Columbia on July 6, 1897, by the then owner, Caldwell, was such a dedication of the strip 5 feet wide at the rear of the lots 32, 33, and 34 that it thereby became a public way, the title to which thereby passed from Caldwell and became vested in the United States.

We have seen that an act of Congress governs the creation of

public ways in the District of Columbia; that the commissioners of the District are vested by said act with the power to regulate the platting and subdivision of lands in the District, and to that end may make general orders; and that the provisions of said act must be complied with in order that streets, avenues, or alleys designated on recorded plats of lands become public ways. It further appears that in conformity with said act the commissioners of the District on May 20, 1895, had adopted an order requiring public alleys to be not less than 10 feet in width. Such order was in force when Caldwell recorded his subdivision of lot 14, and no modification of, or special exception to, the order is shown to have been made which would authorize the acceptance of the proposed alley, which concededly was only 5 feet in width. We are of the opinion that in the absence thereof the proposed alley did not become a public way, that the public acquired no right of way over it, and that no title vested in the United States.

It also appears that efforts were made in 1899, 1900, and 1901 to induce the United States to accept title to the strip, but that the commissioners of the District as often declared that the alley was not a public alley, and that they could not treat it as one.

In the case at bar it clearly appears that there was no complete statutory dedication. To make such a dedication requires not alone that the street or alley be given, but that it be accepted. The reason for this is self-evident. The acceptance of a public street or alley imposes burdens on the District. "The law is well settled that, to constitute a public street or highway by dedication, there must not only be an absolute dedication,—a setting apart and a surrender to the public use of the land by the proprietors,—but there must be an acceptance and a formal opening thereof by the proper authorities, or a user which is equivalent to such acceptance and opening." *Mahler* v. *Brumder,* 92 Wis. 477, 482, 31 L. R. A. 695, 697, 66 N. W. 502.

Here we find neither acceptance nor user. The proposed alley was a mere *cul de sac,* of no use to the public, and by the public

never used. In fact there was no user of any kind. Before that occurred it was built upon. The land adjacent to and abutting upon it was vacant land.

Furthermore, Caldwell, who had recorded the plat, testified that in laying out the tract with the proposed alley he had proceeded with the idea that the owner of the adjoining property would also set off 5 feet so as to make an alley 10 feet wide. This seems reasonable, but whether or not there was such intention is immaterial so far as it affects the question whether "it became a public way," for the general order as to width of public alleys, passed in accordance with the act, was not complied with. There was no valid statutory dedication, for an essential provision of the statute was not complied with, and without this there could be no valid statutory dedication. 9. Am. & Eng. Enc. Law, p. 35.

Nor do we think that appellant's contention that the admission to record of the plat by the commissioners amounted to an acceptance of the alley is well founded, and our attention has not been called to any authority sustaining the proposition.

It is further contended that the 5-foot wide strip shown on the plat at the rear of lots 32, 33, and 34 is a private way. There might be some force in the contention, were the facts other than as disclosed by the record. Caldwell conveyed the three lots to Atchison, who built three houses upon the lots. Up to that time there had been no occasion to use the strip as a private way.

Atchison built three sheds at the rear of the three houses covering the strip, or a part of it, and the building of the sheds on lot 32 was the inducement held out by him which led Carver to buy the place. It appears, therefore, that at no time did anyone use the strip as a private alley. When the appellant bought his lot the shed was in use by Carver, and he knew that it was built on the strip in controversy. After an inspection of the property, and with full knowledge that the alleged alley was built over, and that there was no way, public or private, over it, he bought his lot. And this brings us to the second question.—whether the appellant, or Atchison, from whom he bought, has or had any right to compel the removal of the shed.

Atchison bought the tract from Caldwell, and built upon it at the same time the three houses and sheds. The space platted as an alley only extended back of the three lots, and the space not being a public alley no person other than the owner of the three lots had any vested rights in or over the strip at their rear. In no event, at the time when Atchison built the houses and sheds had anyone any right to object to his putting any part of them upon the strip, save possibly Caldwell. He never sought to compel Atchison to leave the strip unencumbered. On the contrary, at a later date he conveyed any right, title, or interest he had remaining to him in the strip to the appellee. This was before the commencement of the suit. The fact, however, is of no importance in determining this present controversy. We only refer to this deed to show that there is no outstanding interest in, or title to, the strip remaining in Caldwell. It belongs either to the appellee, or to the owners of the three lots in front of it.

Surely, Atchison is estopped from successfully insisting that the appellee should remove the shed, in view of the fact that he located its position and built it, and by doing so induced Carver to purchase the property. At the most, the strip was a private way, and had never been used at the time when he built upon it.

Next we are to consider whether appellant is in any better position than is Atchison, his grantor.

That what Atchison could not do, his grantee Watson, the appellant, cannot do, is settled in this jurisdiction by the case of *Frizzell* v. *Murphy,* 19 App. D. C. 440. Chief Justice Alvey, delivering the opinion of the court in the case, said:

"But waiving the question of the right to maintain the action, the more important question is as to the extent and effect of the alleged implied grant of an easement for the benefit of the house on lot No. 5, as against lot No. 6. Both lots are in the same subdivision and are adjoining each other, and they belonged to the same owner, and the houses on both lots were built by him while he was such owner, and the lot 5, with the building and all improvements, easements, rights, and privi-

leges thereto appertaining were first conveyed and disposed of by the owner of both lots. By this severance, what was at that time a mere quasi-easement for the benefit of the building on lot No. 5 became a fixed and permanent easement by implied grant, and the owner thus conveying the one lot as the quasi-dominant tenement could not derogate from his grant or deny to his grantee, or those claiming under the latter, the use and benefit of what was, at the time of severance of the unity of ownership, an open and apparent easement reasonably necessary to the enjoyment of the part granted. The principle seems to be well settled, both upon principle and authority, that where the owner of both the quasi-dominant and the quasi-servient tenements conveys the former, retaining the latter, all such continuous and apparent quasi-easements as are reasonably necessary to the enjoyment of the property pass to the grantee, giving rise to an easement by implied grant."*

And again: "The same principle is clearly stated in the case of *Wheeldon* v. *Burrows,* L. R. 12 Ch. Div. 31, where the previous cases upon the subject are examined, and the distinction between an implied grant and an implied reservation clearly drawn. In that case it was said that where, upon the grant by the owner of a tenement of a part of that tenement as it is then used and enjoyed, there will pass to the grantee all those continuous and apparent easements (by which, of course, is meant quasi-easements), or, in other words, all those easements which are necessary to the reasonable enjoyment of the property granted, and which have been and are at the time of the grant used by the owner of the entirety for the benefit of the part granted. But if the grantor intends to reserve any right over the part or tenement granted, it is his duty to reserve it expressly in the grant."

Conceding that Caldwell intended or attempted to dedicate the strip for use in connection with the lots, we are of the opinion that it was not such a complete dedication, no one having used it or acquired rights to use it at the time when it was built upon, that it could not be withdrawn by the one so attempting to dedicate it, or by the one succeeding to his inter-

*See also *Wilson* v. *Riggs, ante,* 550. Reporter.

ests.  However this may be, appellant has no standing to question the withdrawal of the strip from its intended dedication.

The estoppel against Atchison runs against the appellant. He saw the shed on appellee's lot, was told that it extended over the alleged alley, and made no effort to learn from appellee what rights he claimed.  He relied, according to his own story, upon Atchison's promise to remove the shed from a place he had sold to another, and to which he was as much a stranger at that time as was any other of the general public.

It appearing that the alley never was a public alley; that before anyone acquired rights in, to, or over it as a private alley, or as an easement, it was closed; and that appellee acquired his title long before appellant acquired his,—both acquiring from a common owner,—it is not seen that appellant upon any theory can maintain his suit.

The court below committed no error in dismissing the bill of complaint, and therefore its decree must be and is affirmed, with costs.                                        *Affirmed.*