JOSEPH ANTONI & others *vs.* MOSES K. BELKNAP & others.

A lease of land for years, given, during the absence of the landowner from the country, by an agent having authority only to "take charge of the land while he was gone, and make it pay the best way he could," is terminable by the landowner on his return.

A wooden ice-house, large enough to hold upwards of two thousand tons of ice, built on leased land by the lessee, upon no foundations except a wooden block under each corner of the sills, which are set into the ground, upon a layer of charcoal, at a depth varying with the surface of the land from six inches to three feet, and banked on the outside with soil to prevent the air from circulating under them. is a fixture which the lessee may remove.

On a trial of the issue whether a tenant at sufferance removed a fixture within a reasonable time after the landlord's demand for possession, it appeared that the fixture was an ice-house, which at the time of the demand contained upwards of two thousand tons of ice, that, except by the sale of one hundred tons in a lot, the ice was not carried away, after the demand, faster than was necessary for the daily supply of the tenant's customers that nearly or quite two months were consumed in removing it in this manner, but it would have become porous and of little value if it had been transferred to another building at that season of the year; and that the building was removed without delay after the removal of the last of the ice. But the landlord "offered no evidence that the tenant could in any way have got the ice out faster than he did, or could have removed the building quicker," and the landlord himself and other witnesses "testified that the tenant got the ice away as soon as possible after the demand for possession." *Held*, that the judge was not warranted in ruling that the building was not removed within a reasonable time.

TORT, by Joseph Antoni and the heirs of his deceased brother Paul Antoni, for breaking and entering a close in Springfield, owned by the plaintiffs as tenants in common, and removing therefrom an ice-house in July 1867. The defendants justified under a lease of the close, dated May 1, 1865, for three years from date, at a yearly rent of fifteen dollars, executed to them by Luke Harvey, " as agent for Joseph and Paul Antoni."

At the trial in the superior court, before *Brigham*, J., the plaintiffs proved a conveyance of the close to Joseph and Paul in October 1851; and it appeared that Paul went to Italy in December 1851, never returned, and died there in February 1855; that in February 1855 Joseph also went to Italy ; that in May 1865, after taking the lease, the defendants entered on the close and built the ice-house, " and there was evidence tending to show that this building, as originally constructed, and up to the time of its removal, was not a fixture to the freehold;" that Joseph returned to Springfield in April 1867, and within a few days afterwards demanded of the defendants possession of the close, and entered on it in their absence and built a fence thereon, which " was torn down and rebuilt several times;" and that in July 1867 the defendants removed the ice-house from the close.

Harvey, testified that, about the time Joseph went to Italy, he came to the shop of the witness and said that he was going to Italy and did not know how long he should be gone, and that, if the witness " would take charge of the lot while he was gone and make it pay the best way he could," he would be thankful ·

that he wanted the witness to make it pay the taxes and for his services, if he could; that the witness replied that it might be made to pay " by letting it for putting up clothes-lines and pig-pens, and such like," and Joseph said, in reply to this, " Any way to make it pay;" that he had no other authority from Joseph or the other owners of the close, and no communication with them until Joseph returned to Springfield. But Joseph Antoni, as a witness, denied that he gave Harvey authority to manage the close in his absence.

" There was evidence tending to show that the premises, at the time of Joseph's conversation with Harvey, were vacant, and of the size of an ordinary building lot; that the soil was sandy, and nearly valueless for any other purpose than as a building lot; and that the letting of them to the defendants for the uses to which the defendants put them was the most profit-able and advantageous use Harvey could make of them. There was no evidence that any notice was given to terminate the tenancy of the defendants, except the verbal demand of the premises aforesaid. It was admitted that no damage was done the freehold by the occupation of the defendants, or their acts."

The plaintiffs asked for the following instructions to the jury: " If the jury are satisfied that Harvey had authority to take care of this lot, and to lease it in the absence of Joseph from the country, and that was the extent of his authority, then the lease under which the defendants justify was in excess of that authority. If Harvey had authority to lease the premises dur-ing the absence of Joseph, the lease to the defendants was ter-minated, without notice, by the return of Joseph to Springfield. The defendants had no right to remove the ice-house placed on the lot by them, after the return of Joseph to Springfield. The authority of Harvey to take care of this property, in the absence of Joseph from the country, would not authorize him to make a lease of this property for a term of years. Harvey having no authority to lease the premises from the heirs of Paul Antoni, the defendants had no right, as against them, to remove the building."

The judge declined to give these instructions, but instructed the jury as follows: " A parol direction and authority given by

Joseph Antoni, as tenant in common with his brother Paul, or with the heirs at law of Paul, of the land described in the declaration, to Harvey, to manage and let the land so as to make it pay an income, empowered Harvey to let the land to the defendants upon the terms and conditions contained in the lease produced; and a possession of the land by the defendants under and upon said terms and conditions, a defence of that possession against the plaintiffs by the removal of barriers put up by the plaintiffs to interrupt, and the removal of their ice-house from the premises within the term to which said lease applied, would not be wrongful, so that these actions could be maintained to recover damages therefor: provided that their possession, defence of possession, and removal of erections made by them in the course of their possession, within the terms of the lease, caused no injury to said land, which was not necessary and incidental to their enjoyment of the land under the lease, and the exercise of the rights and privileges reserved to them under the lease." The verdict was for the defendants, and the plaintiffs alleged exceptions, which were argued at September term 1868

*F. Fellowes* (of Connecticut) & *N. A. Leonard,* for the plaintiffs.

*M. P. Knowlton,* for the defendants.

WELLS, J. At the trial in the superior court, the presiding judge ruled, and instructed the jury in substance, that, under the authority given by Joseph Antoni, the lease of the premises made in his behalf by Harvey to the defendants was binding upon him and justified the acts done by the defendants.

We do not think that the testimony of Harvey, as stated in the bill of exceptions, established an authority sufficient for that purpose. It appears to us to limit the agency, and the authority of the agent, to the period of the absence of Joseph from the country. His return terminated the agency; and his demand upon the defendants and entry upon the premises put an end to whatever estate the defendants had acquired therein. Upon the facts of the case as stated, the defendants would be liable for nominal damages at least. Whether they are liable for the value of the building removed by them, the facts reported do not enable us to determine. *Exceptions sustained.*

At the new trial, before *Putnam*, J., there was evidence sub-stantially as at the former trial, concerning the title of the plain-tiffs in the land, the occupancy of the defendants, the return of Joseph Antoni, his demand for possession in April or early in May 1867, a few days after his return ; and also evidence as follows : " The original entry of the defendants upon the land was in May 1865 ; and in the same year they erected upon it a large building for the storage of ice. At the time of Joseph's return, this building was packed full of ice, containing two thou-sand tons or more. The building was erected upon the ground, with no stones or other foundations under the sills, except a wooden block under each corner. The sills themselves were set into the ground upon a layer of charcoal, to keep them from rotting, at depths variously estimated by the witnesses, at six inches in some places to three feet in others, according to the unevenness of the ground, and, on the outside, were banked up with soil to prevent the circulation of air under them. The evidence tended to show that the defendants continued to oc-cupy this building for the storage of ice until it was removed as hereinafter stated ; and George M. Dimmock, one of the defend-ants, testified that, with the exception of the sale of one hundred tons, which they made out of this lot, for export, in consequence of the demand of the plaintiffs upon them, they did not remove the ice from the building, and made no attempt to do so, faster than was necessary for the daily retail supply of their customers in Springfield. On the morning of Monday, July 22, they hav-ing carried away the last of the ice on the preceding Saturday, the building was taken down and carried away by them. The plaintiffs offered no evidence that the defendants could in any way have got the ice out faster than they did, or that they could have removed the building quicker. But the plaintiff himself and other witnesses testified that the defendants got the ice away as soon as possible after his demand upon them for pos-session. There was also evidence that the ice would have be-come porous, and of little value, if removed from this to any other building at that season of the year. The precise time when the building was removed did not appear, but the evidence

showed that it was taken down in a few hours, and could have been built in one or two days."

The defendants sought to justify their acts under the lease from Luke Harvey, which they put in evidence as at the former trial; and also under "a verbal authority" from Paul Gari, a member of the firm of Chici & Gari. Harvey was called as a witness, and testified "that Antoni told him, when he was going to Italy, that he wanted him to pay taxes on the land and to take charge of it until his return, and to sell it if he could find a purchaser, and, in case he sold it, to write to Chici & Gari, and they would make a deed, and also told him to use it to the best advantage to make it pay." And Gari testified to what authority concerning the land was originally given by Antoni to Chici & Gari; and that Antoni also gave to Chici "a power of attorney in writing to sell and convey the premises by deed," and renewed this power to Gari in 1861, after the death of Chici, which occurred in 1860. The written power was put in evidence; but it, and further details of Gari's testimony, and some other evidence, offered by the defendants in confirmation of Gari's testimony and excluded, are now immaterial.

" The defendants contended that the building was not a fixture, as between landlord and tenant, and at least that they had a right to remove it during the continuance of their tenancy, and, if the tenancy was determinable upon a contingency, that it could be removed within a reasonable time after the defendants knew of the happening of the contingency; and that whether or not it was removed within a reasonable time, under the evidence in this case, was a question for the jury, with proper instructions from the court; and they claimed that, if the tenancy was terminated upon Antoni's return to this country, the building was removed within a reasonable time after knowledge of it came to the defendants, and that, if the defendants were trespassers in removing the building, the measure of damages would be simply the diminution in value of the premises by reason of the entry and removal;" and they asked for special instructions to the jury concerning what rights were acquired from Harvey or from Gari. These instructions the judge refused to give, and they are now immaterial.

The judge ruled " in substance as follows: That there was no evidence of any authority in Harvey to rent the premises for a period which could extend beyond the time of Antoni's absence; that there was no evidence that the defendants had any legal authority from Gari which would justify their acts, even if Gari undertook to give it, whether they claimed to act under an authority direct from Gari, or as ratifying the lease of Harvey; that, if he had the authority to ratify such lease, there was no evidence of any such ratification; that the written power to Gari, which was long before this leasing, revoked all verbal authority to Gari to lease, if he had any; that the building, though a fixture, could be removed by the defendants, provided it was done in a reasonable time after the termination of the tenancy; that the question of whether or not it was removed within a rea- · sonable time after the termination of the tenancy was for the court and not for the jury, there being no dispute about the facts; and that it was not removed within a reasonable time; that upon the whole case the defendants were liable; and that the rule of damages would be the value of the building removed." The jury found for the plaintiffs accordingly, and the defendants alleged exceptions, which were argued at this term by the same counsel.

WELLS, J. At the former hearing of this case, it was held that the authority which Joseph Antoni gave to Harvey did not enable him to lease the premises for a term which should extend beyond the period of Antoni's absence from the country. The testimony at the last trial, including that offered by the defendants and excluded, fails to show any greater authority in support of the lease than was produced at the former trial. Aside from the written power of sale, (which is limited expressly to a sale,) it does not appear that Gari had any greater authority from Antoni, in relation to these premises, or that he attempted to confer any greater authority upon Harvey than that which Harvey received directly from Joseph Antoni. It is not necessary, therefore, to discuss more in detail the various rulings and instructions asked for and refused, or those given, so far as they relate to the main question of right to the possession of the land.

The defendants' tenancy, under the lease from Harvey, being terminated by the return of Joseph Antoni and his demand of possession, they became mere tenants at sufferance, entitled to such reasonable time to remove themselves and their property from the premises as the nature and circumstances of the case required.

Upon the question of reasonable time, the case is stated as follows: " On the morning of Monday, July 22, they having carried away the last of the ice on the preceding Saturday, the building was taken down and carried away by them. The plaintiffs offered no evidence that the defendants could in any way have got the ice out faster than they did, or that they could have removed the building quicker. But the plaintiff himself and other witnesses testified that the defendants got the ice away as soon as possible after his demand upon them for possession." We do not think that, upon this statement, the court below were warranted in ruling that the removal was not made in a reasonable time. Although a considerable time had elapsed, (perhaps two months, but the testimony reported does not fix it definitely,) yet, considering the nature and quantity of the property to be removed, and the absence of evidence that any other mode of removal was practicable, the court are of opinion that the mere lapse of that period of time is not sufficient to overcome the force of the statement above quoted.

At the former hearing, the case presented no such ground for regarding the delay as reasonable ; and there was an apparent liability of the defendants for at least nominal damages. But it was then stated that " there was evidence tending to show that this building, as originally constructed, and up to the time of its removal, was not a fixture to the freehold." If it was personal property, there might be no damages beyond a nominal sum. Upon the case as it now appears, the building is manifestly a tenant's fixture, liable to be removed during the term of the lease, or, when the lease is terminated as this has been, within a reasonable time afterwards. *Penton* v. *Robart* 2 East, 88.

As it appears to the court, upon the case stated in the exceptions, that the building was removed within a reasonable time, the verdict must be set aside, and a new trial had. The heirs of Paul Antoni had no better right to retain the building than their cotenant. *Rising* v. *Stannard,* 17 Mass. 282. If it were otherwise, having joined in this action, they can recover only upon a joint interest.       *Exceptions sustained.*