CORDELIA G. ROBERTS *vs.* LYNN ICE COMPANY.

Essex.   November 2, 1904. — February 28, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Landlord and Tenant.   Fixtures.   Contract,* Construction.   *Words,* "Use", "Use and benefit."

The lessee of a building and the land on which it stands under a lease in writing must pay the full rent although the building is destroyed by fire during the term, unless the lease contains a provision to the contrary, but one who has the use of the premises as a licensee under a contract that he shall have such use for a specified time at an agreed compensation is not bound to pay for the use of the building after its destruction by fire.

Although an ice house built by a lessee of the land on which it stands may be made personal property by agreement, an ice house built by the owner of the land is real estate.

An instrument in writing, by which a landowner lets to an ice company his ice business and privileges in a certain city " with the use and benefit of his ice houses " for a period named, is a lease of the ice houses and the land under them and not a mere contract for the use of the ice houses as licensee, and if the ice houses are destroyed by fire during the term the full rent none the less must be paid.

Whether an instrument in writing is a lease or a contract for the use of the premises as licensee is a question of law.

CONTRACT for $1,525 of rent alleged to be due under an instrument in writing alleged to be a lease, with a second count for the same sum for use and occupation of the premises.   Writ dated January 7, 1903.

There was an answer and a declaration in set-off. In the Superior Court the case was tried before *Schofield*, J., without a jury. He found for the defendant on the first count of the declaration, and on the second count found for the plaintiff in the sum of $632.34. Upon the declaration in set-off the judge found for the defendant in the sum of $21.51. Upon the whole case the judge found that the plaintiff was entitled to judgment in the sum of $610.83, and at the request of the plaintiff reported the case for determination by this court. If the finding was right upon the facts reported competent to be considered, judgment was to be entered for the plaintiff in the sum of $610.83, with interest from the date of the finding. If the finding was erroneous upon the facts reported competent to be considered, it was to be set aside, and such judgment was to be entered or such order was to be made as law and justice required.

The instrument declared upon in the first count was as follows :

"Memorandum of Agreement, made this twenty-ninth day of January, 1898, by and between B. F. Roberts, of Lynn, and the Lynn Ice Company, a corporation having its usual place of business in said Lynn.

"Witnesseth, That said Roberts has, and hereby does, let to said Ice Company his ice business and privileges in said Lynn, at Flax Pond, with the use and benefit of his ice houses together with the engines, chains, runs, the said engine, chains, and runs to be put in good order and delivered to said Company by said Roberts ; with the right to pass and repass, in the transaction of said ice business, over and upon a court or way owned by said Roberts, to said ice houses for the term ending December 15, 1898. The houses to be cleared of ice by the first day of October and left ready for repairs.

"Said Lynn Ice Company agrees, in consideration of the aforesaid letting to them, to pay said Roberts the sum of fifteen hundred and twenty-five dollars ($1,525.00), which sum shall be paid to said Roberts as follows: Five hundred dollars ($500.00) on the fifteenth day of October next; five hundred dollars ($500.00) on the fifteenth day of November next; and five hundred and twenty-five dollars ($525.00) on the fifteenth

day of December next, at the termination of this agreement. These payments to be conditioned upon the amount of ice which Z. J. Chase & Son, Coolidge and Livermore and J. L. Swan, or the Independent Ice Company shall be able to cut and house from said Flax Pond ; the proportion of said full sum to be paid by said Lynn Ice Company to be the proportionate amount of ice cut and housed by said firms.

" Witness our hands and seals the day and year first above written. The Lynn Ice Company [seal], by Albert H. Wyer, Treasurer. B. F. Roberts [seal]."

The following extensions and agreements were indorsed on the instrument :

" Lynn, March 13–99. In consideration of one dollar to him paid the receipt of which is hereby acknowledged, I hereby agree to continue the within contract for the term ending December 15, 1899 as per the conditions contained therein. Witness our hands and seals the day and year first above written. The Lynn Ice Company [seal], by Albert H. Wyer, Treasurer." [Signature of witness.]

" Lynn, January 3rd, 1900. In consideration of one dollar to me paid, the receipt of which is hereby acknowledged, I hereby agree to continue the within contract for the term ending December 15th, 1900 as per the conditions contained therein. Witness our hands and seals the day and year first above written. Cordelia G. Roberts [seal]. The Lynn Ice Company [seal], by Albert H. Wyer, Treasurer." [Signature of witness.]

" Lynn, Dec. 21, 1900. In consideration of one dollar to me paid, the receipt of which is hereby acknowledged, I hereby agree to continue the within contract for the term ending Dec. 15, 1901 as per conditions contained therein. The Lynn Ice Company [seal], by Albert H. Wyer, Treasurer. Cordelia G. Roberts, Executrix " [seal]. [Signature of witness.]

" Lynn, Jan. 27, 1902. In consideration of one dollar to me paid, the receipt of which is hereby acknowledged, I hereby agree to continue the within contract for the term ending Dec. 15, 1902 as per conditions contained therein, subject to the following change : In case an artificial Ice Plant is established in Lynn, then the following agreement to take the place of the former, The Lynn Ice Co., to put up the Ice at their own ex-

pense and pay for the am't. they are able to sell or use under the new conditions. The price to be at the rate of the old contract, and it is further agreed that all ice remaining in the Ice Houses after Dec. 15, 1902 shall revert to Mrs. C. G. Roberts. The Lynn Ice Company [seal], by Albert H. Wyer, Treasurer. Cordelia G. Roberts, Executrix [seal].

"Lynn, Dec. 21, 1900. In consideration of one dollar to me paid, the receipt for which is hereby acknowledged, I do grant the Lynn Ice Company permission to move old engine and replace it with one of their own, and it is hereby agreed that they shall remove it also at their pleasure the same to be without expense to my estate. Cordelia G. Roberts, Executrix."

Benjamin F. Roberts died on November 29, 1898, and the plaintiff was appointed executrix under his will. On the night of June 4, 1902, without fault on the part of either the plaintiff or the defendant, the ice houses, four in number, were destroyed completely by fire. They were not insured. After the fire the defendant made no use of the property described in the lease or contract, except to drive teams over the court adjoining the ice houses to a factory owned by the defendant, and this use of the court was not under the instrument sued upon.

The case was argued at the bar in November, 1904, before *Knowlton*, C. J., *Lathrop*, *Barker*, *Hammond*, & *Loring*, JJ., and afterwards was submitted on briefs to all the justices.

*W. H. Niles*, (*I. B. Keith* with him,) for the plaintiff.

*J. E. Odlin*, for the defendant.

LORING, J. The plaintiff's right to recover on the first count depends upon the character of the instrument originally executed by the plaintiff's husband and extended by her after his death. If it was a lease, the ice houses were the property of the defendant for the term ending December 15, 1902, and the loss caused by their being burned to the ground is the defendant's loss for the unexpired part of that term a portion of a year. If on the other hand the defendant under the instrument here in question was as matter of contract to have the use of the ice houses as a licensee under the plaintiff, the plaintiff was the owner of them at the time of the fire, and the loss falls on her. Furthermore in that case the plaintiff has not furnished that for which by the terms of the contract she was to be paid, namely,

the use of her ice houses, and the sum stipulated for is not due. So much is settled by *Wells* v. *Calnan*, 107 Mass. 514.

The question presented by this case therefore is the question of the construction of this instrument originally made by Roberts on January 29, 1898, and extended by the plaintiff, his widow, on January 27, 1902. By it as originally drawn, Roberts " does let to said Ice Company his ice business and privileges in . . . Lynn, at Flax Pond, with the use and benefit of his ice houses, . . . for the term ending December 15, 1898." The extension of this instrument here in question was dated January 27, 1902; the term was extended to December 15, 1902; and it is found by the presiding judge that " After the agreement of January 27, 1902, was executed, the defendant corporation by its servants and agents took possession of the ice houses and machinery and began to cut ice and filled the ice houses."

There is nothing in the defendant's contention that these ice houses are personal property. It is true that they are of such a construction that had they been put up by some one other than the owner under an agreement to that effect, they would have been personalty. See *Antoni* v. *Belknap*, 102 Mass. 193; *Handforth* v. *Jackson*, 150 Mass. 149. But being put on the land by the owner of it in fee they became a part of the realty.

The question whether an agreement as to the use of real estate is a lease of it or is a contract by which the owner enters into an agreement to give to the other party to the contract the use of it as a licensee under him, generally has arisen, in this Commonwealth, in case of contracts as to the use of specified rooms which are part of a building. That is to say, the question in those cases has been whether the other party to the contract was a lodger or a tenant. The question there and in the case now before us is decided by determining whether as matter of construction, the contract gave the other party exclusive possession of the premises against the world including the owner, or gave him a license to occupy under the owner, in which case the rights of the other party rest in contract. See on the one hand *Swain* v. *Mizner*, 8 Gray, 182; *Young* v. *Boston*, 104 Mass. 95; *Porter* v. *Merrill*, 124 Mass. 534; *Fiske* v. *Framingham*

*Manuf. Co.* 14 Pick. 491 ; and on the other hand, *White* v. *Maynard*, 111 Mass. 250 ; *Central Mills* v. *Hart*, 124 Mass. 123 ; *Hamblett* v. *Bennett*, 6 Allen, 140.

The character .of the instrument in the case at bar would hardly have been questioned had the thing let been the ice houses in place of " the use and benefit" of them. And although the word " use " is ordinarily employed when the owner contracts to give another person under him a right to occupy as a licensee, yet the words here are not " the use of " but " the use and benefit of " the ice houses, and the defendant took exclusive possession of them under the lease. The words " use and benefit " are words of wide application, and mean the entire beneficial interest in the property in question. See *Smith* v. *Harrington*, 4 Allen, 566 ; *Paine* v. *Forsaith*, 86 Maine, 357 ; *Lawe* v. *Hyde*, 39 Wis. 345 ; *Heaston* v. *Board of Commissioners*, 20 Ind. 398, 403. It is conceded in the case at bar, for example, that the plaintiff took a life interest at least in the real estate of her husband under a devise to her of all the residue of his estate " for her use and benefit during her life," and it would have to be conceded that the remainder vested in fee in the grandson under a devise to him after her death " for his use and benefit." And see *Lewis* v. *Shattuck*, 173 Mass. 486. In *M'Cullough's appeal*, 4 Yeates, 23, it was held that a devise to a wife of " the benefits of all my real estate " was a devise of the real estate. The conclusion was reached on the ground that a devise of " the benefits " of real estate was equivalent to a devise of the profits of real estate, and it is settled that such a devise is a devise of the land. Co. Litt. 4 b. *Parker* v. *Plummer*, 1 Cro. Eliz. 190. *Stile* v. *Tomson*, Dyer, 210.

A majority of the court are of opinion that the instrument in question gave the defendant exclusive possession of the ice houses and of the land under them at least, that it was a lease of this real estate and not a contract for the use of it as a licensee under the plaintiff ; and therefore the case comes within *Fowler* v. *Glover*, 4 Dane Abr. 383 ; *S. C. nom. Fowler* v. *Bott*, 6 Mass. 63 ; *Bigelow* v. *Collamore*, 5 Cush. 226, 231 ; *Kramer* v. *Cook*, 7 Gray, 550 ; *Leavitt* v. *Fletcher*, 10 Allen, 119, 121 ; *Wells* v. *Calnan*, 107 Mass. 514, 518. Since the defendant had an estate in the land under the ice houses at least, the case does not come within

*Stockwell* v. *Hunter,* 11 Met. 448, and *Shawmut National Bank*
v. *Boston,* 118 Mass. 125.

The only other contention made by the defendant is that
whether this was such a contract or a lease is a question of
fact, and so not open for review here. There is nothing in
that. The question is the question of the construction of this
agreement and that is a question of law.

> *Judgment for the plaintiff on the first count for $1,525,*
> *with interest, less $21.51 found to be due in set-off.*