LAMB *v.* PONTIAC, OXFORD & NORTHERN RAILROAD CO.

EASEMENTS—RAILROAD RIGHT OF WAY—CATTLE PASS—ADVERSE POSSESSION.

Where a landowner for a nominal consideration conveyed land to a railroad company for the sole purpose of constructing and maintaining a railroad, and the company in constructing its road carried its track over a lane connecting the two parts of the farm, forming a stock pass which the landowner used continuously for 23 years, it will be presumed that such use was under a claim of right, and the company will not be permitted to discontinue it and compel the use of a statutory crossing.

Appeal from Lapeer; Erskine, J., presiding. Submitted October 18, 1907. (Docket No. 95.) Decided December 10, 1907.

Bill by Horace Lamb against the Pontiac, Oxford & Northern Railroad Company and Robert J. Lounsbury, receiver, for the restoration of a stock pass under defendant's roadbed. From a decree for complainant, defendants appeal. Affirmed.

*R. L. Campbell* (*William E. Brown*, of counsel), for complainant.

*John H. Patterson*, for defendants.

On the 7th of November, 1883, Jacob C. Lamb, who was then the owner of the southwest quarter of section 13, town 6 north, of range 11 east, in Lapeer county, in this State, executed and delivered to the Pontiac, Oxford & Port Austin Railroad Company for a nominal consideration a deed of "fifty feet in width with sufficient for slope on the line now located by said company for the route of their railroad from the city of Pontiac to the village of Caseville * * * over and across" the above-mentioned description. The deed contained a provision that the land should be used for the purpose of constructing and maintaining a railroad and the appurtenances and for no other purpose whatever, and the habendum clause contains the words "for the uses herein expressed but for no other use." Mr. Lamb's wife joined him in this conveyance, and it was duly recorded. Mr. Lamb was a man of affairs, a large landowner, and engaged in business at Imlay City. At the time the deed was made, the roadbed had been constructed across the land, and it divided the farm so that about 40 acres, abutting upon a stream of water and inaccessible from any highway, chiefly valuable for the purpose of pasturing cattle, was cut off from the remainder of the farm and from the farm buildings. A lane had for many years passed down to and across the land described in the deed at a point where the track of the railroad is laid upon a considerable embankment, made by filling the right of way with earth. At this point the railroad company constructed a passage or subway with wing fences to the line of the right of way. Timbers were used to support the track, and piling to confine the embankment, and no filling was done upon the land occupied by this way. By means of these fences and the subway, the lane was continued from the farm buildings to the pasture and to water, through and along which cattle, without attendance and without danger, passed from one portion of this farm to the other. The railroad company also constructed a surface crossing at some distance from this subway. The passageway, including the

fences, was maintained — at one time, in 1894 or 1895, new piling was put in — by the railroad company until April 26, 1905. It has been continuously used. The reasons of convenience and economy which would account for the original construction still obtain. The Pontiac, Oxford & Northern Railroad Company is the successor of the original grantee in said deed, and Robert J. Lounsbury is receiver of the corporation. Jacob C. Lamb died in 1898, and the complainant is one of his heirs at law who succeeded to the ownership of the premises. On April 26, 1905, the railroad company, having requested and been refused permission so to do, the conditions demanding that repairs be made, filled up this passageway and at the same time constructed a surface crossing 100 feet south, connected by a narrow lane within the defendant's right of way with the east end of the lane so leading to the original passageway. The bill in this cause is filed to compel the company and its receiver to restore the pass and put it in such a condition that stock may use it, and for an injunction perpetually enjoining them from filling up or obstructing it. It is averred in the bill that this passageway across the right of way of the railroad company was constructed by agreement for the use of the landowner. It is also, in another paragraph of the bill, charged that "the said stock pass has been used continuously by the owners of the land, by your orator and his grantors, continuously, openly, adversely and under a claim of right so to do ever since its construction."

No written agreement concerning the construction and maintenance of the pass was produced. The testimony supports a finding that a search among the papers and files of the defendant company did not discover such a document; nor is it to be found among the papers of the grantor, a portion of which were destroyed in 1884 or 1885 at a time when his safe was entered by burglars. The witnesses to the deed were John J. Lamb, now deceased, and W. F. Hall. Mr. Hall was produced as a witness and gave testimony tending to prove that at the time he

was called to witness the deed he heard a conversation between Jacob C. Lamb, the grantor, and representatives of the railroad company respecting matter written upon a sheet of foolscap paper which was read, but not aloud, and passed back and forth between them; that Mr. Lamb after reading the paper said he could not accept it in that form, that he wanted his lane to pass under the road and that he wanted stone walls; that piling was talked about; that the person who appeared to represent the company said it would be done all right in time but that it took time to get those things; that Lamb replied that he did not wish to take anybody's word, he wanted it in black and white. Thereupon, something more was apparently written upon the paper, it was passed to Lamb, who read it and said it was all right, and then signed the deed and passed it to the witness. In brief, this is all the testimony for complainant upon this subject. The person identified by the witness as present at this interview representing the company denied being present at such an interview, denies all knowledge of such or any similar transaction. It is the claim of the defendant that Jacob C. Lamb was permitted to use the cattle-pass during his lifetime and that he had no more than a parol license to do so, his right ceasing at his death in 1898; that if the right was given him by a writing, there is no proof of the contents of the writing or that the right inured to the benefit of his heirs or assigns. The learned circuit judge was of opinion that the complainant had established the elements of an adverse user for the requisite period. A portion of the reasoning employed in the opinion which was filed is:

" When the right of way was granted, the pass existed; and its continuance was desirable, as it was of value to the farm. It is improbable that Lamb would have consented to a conveyance cutting it off, especially when the consideration for this conveyance was nominal. On the other hand, it is not reasonable to suppose that the railway company would go to the expense of constructing this pass unless it was under obligation so to do; nor would it have

maintained it all of these years in addition to the surface crossing, unless there was some obligation on its part to that effect. It appears that the only cattle-passes maintained by the railroad company were those which it was obliged to keep up."

OSTRANDER, J. (*after stating the facts*). At the time the railroad was constructed, and thereafter, Jacob C. Lamb owned the fee of the land in question and complainant now owns it. When the grant was made to defendant's assignor, it had no possession of the land used as a lane, and has never since occupied it, except to bridge it; it has never occupied the surface of the land. On the contrary, by erecting piling to confine its embankments, by constructing the overhead work and by building and maintaining the wing fences, it has, from the beginning, bounded and defined the use it made of the land. It may be conceded that the grant to defendant's assignor is not ambiguous and is sufficient in terms to give full and perfect use of the surface of the land conveyed and the right to go below and above the surface as may be necessary to make, operate, and maintain a railroad. The right created by the grant would not be lost by mere neglect to enjoy it for 15 years, or more, if there was no evidence of an adverse user. *Day* v. *Walden*, 46 Mich. 575, 583. But the grantee did construct its road in the manner described and so for 23 years it maintained it. It is a necessary inference from the proven facts that this was pursuant to an understanding of the parties to the grant. It involved maintenance of the road with reference to the lane.

There is no access to the pasture land and to the water except over or under the defendant's road. The land is now and has been used largely as a stock farm. There were 60 head of cattle on it when the way was obstructed. The presumption is, notwithstanding the grant, that the parties did not intend to deprive the grantor of reaching and using the land beyond the strip removed. *New York, etc., R. Co.* v. *Railroad Com'rs*, 162 Mass. 81.

The statutory crossing (2 Comp. Laws, § 6294) would, it is true, secure passage between the different portions of the farm. And it has been held that a right of way is not to be implied merely because it is convenient. Jones on Easements, § 315. But neither is the implication limited by strict necessity. And we are not now called upon to determine whether the way claimed to exist was, in law, in its inception, a way of necessity. There is no reason why, in recognition of the demand for a suitable and convenient way, as a way of necessity, the parties should not agree, by parol, to locate it in this lane. Jones on Easements, § 337. If they did agree, equity will restrain the railroad company from taking possession of any additional part of the land after its roadbed is located and completed. Jones on Easements, § 343. Taking into consideration all of the circumstances, including the grant, we are of opinion that it must be presumed that the use of the pass by complainant and by his ancestor was under claim of right, the extinguishment of which defendant has not made out.

The decree of the court below should not be disturbed. It is affirmed, with costs.

MCALVAY, C. J., and CARPENTER, HOOKER, and MOORE, JJ., concurred.