McCLINTIC-MARSHALL CO. v. FORD MOTOR CO.

1. MECHANICS' LIENS—THEORY OF STATUTE.

The mechanics' lien law is framed upon the theory that those who perform work or furnish material which enters into and enhances the value of improvements on real estate are entitled to a preferred claim against and a lien upon the specific property presumably bettered by the performance of such labor and the furnishing of such materials.

2. RAILROADS—LIENS—STATUTES.

Laborers and materialmen doing work for or furnishing material to railroad companies are protected under 2 Comp. Laws 1929, §§ 11394–11396, and not under the mechanics' lien law.

3. STREET RAILWAYS—LIENS—STATUTES.

Those who furnish labor and material to street railways are protected under 2 Comp. Laws 1929, § 11397, and not under the mechanics' lien law.

4. MUNICIPAL CORPORATIONS—LIENS—STATUTES.

Enforcement of claims against municipal corporations, townships, cities, and villages is governed by 3 Comp. Laws 1929, § 14690.

5. MECHANICS' LIENS—WHEN INTEREST IS SUFFICIENT TO SUSTAIN LIEN.

Any interest which the owner, part owner, or lessee may have is sufficient to sustain mechanics' lien, provided the interest is such that it can be assigned, transferred, mortgaged, or sold under execution.

6. EASEMENTS—UNDERPASS—LIMITATIONS OF GRANT.

Right acquired in writing by manufacturing company to construct for use by its employees and others an underpass under land owned by railroad companies and the city amounted to more than a license and was in nature of an easement for the benefit of particular land, but it is limited to such land and to purposes of the grant.

As to right to enforce mechanic's lien for building erected by licensee, see annotation in 45 A. L. R. 581.

On right of owner of dominant estate to grant rights in easement to one having no title to or interest in the tract to which it is appurtenant, see annotation in 41 L. R. A. (N. S.) 1107.

7. Same—Easement Defined.

> An easement is a right which one proprietor has to some profit, benefit, or lawful use, out of, or over, the estate of another proprietor.

8. Appurtenances—When Appurtenant.

> A thing is appurtenant to something else when it stands in the relation of an incident to a principal and is necessarily connected with the use and enjoyment of the latter.

9. Easements—Incorporeal Right—Underpass Under Lands of Others—Right to Convey.

> Easement in nature of right to construct and maintain underpass under land of others constitutes incorporeal right attached to and belonging with the grantee's real property to which it is annexed, and though it might pass as an incident to it, it is a species of servitude incapable of existence separate and apart from the particular land to which it is annexed, and therefore may not be conveyed separate from the land to which it is appurtenant, nor converted into an easement in gross.

10. Mechanics' Liens—Easements.

> Where railroad companies and city granted to manufacturing company right to construct underpass under their lands to be used in connection with grantee's lands, neither grantors' land nor said easement is subject to mechanic's lien for labor or materials used in constructing said underpass.

11. Same—Claim of Lien Must Follow Contract.

> Claims of lien claimants under mechanics' lien law must follow the contract.

12. Easements—Highways and Streets—Quasi-Public Use of Easement—Street Railways—Railroads—Municipal Corporations.

> Where purpose of underpass constructed under city street and railroad companies' land by manufacturing company was to facilitate speed and safety of city street cars and of persons going to and from said company's plants, its uses are *quasi*-public in character.

13. Mechanics' Liens—Liens Attach to Land as Well as Buildings.

> Under mechanics' lien law (3 Comp. Laws 1929, § 13101 *et seq.*), liens attach not only to the buildings erected, but to the interest of the party erecting them, the owner, part owner, or lessee, in the real estate.

14. SAME—WHEN LIEN ATTACHES TO BUILDING ONLY—SEVERABILITY.
   If the person contracting for the erection of the building has no legal title to the land, the lien attaches to the structure erected, and the court may order sale of the building separately if severable from the land.

15. LICENSES—PERSONALTY—RIGHT OF LICENSEE TO REMOVE BUILDING.
   Generally, buildings erected on lands of another under leave or license so to do, in furtherance of the purposes of the permissive use and occupation, remain personal property and may be removed by the lessee or licensee at any time during his occupancy, or, if such occupancy or right of occupancy terminate on a contingency, within a reasonable time thereafter.

16. MECHANICS' LIENS—LIEN IF ANY IS AGAINST ENTIRE STRUCTURE ERECTED UNDER ONE CONTRACT.
   Where underpass constructed by manufacturing company under lands of others was also partly on its own land, but construction was under one contract, it must be considered as one piece of work, and if liens exist they must be against entire structure.

17. SAME—NOT ENFORCEABLE AGAINST PART.
   Mechanic's lien may not be enforced against part of an entire building.

18. SAME—ENFORCEABILITY ESSENTIAL CHARACTERISTIC.
   Since right to enforce lien by sale of the property to which it attaches is its essential characteristic, liens in abstract are nonexistent; lien that is unenforceable being a nullity.

19. SAME—EASEMENTS—UNDERPASS INCAPABLE OF ALIENATION SEPARATE FROM LAND NOT SUBJECT TO LIEN.
   Easement granted to manufacturing company to erect underpass under lands of grantors, to be used as appurtenance thereto and to grantee's land, is not subject to mechanic's lien, because not capable of mortgage, sale, or alienation separate and distinct from the land to which it is appurtenant, and if detached it ceases to exist.

Appeal from Wayne; Jayne (Ira W.), J. Submitted April 22, 1931. (Docket No. 132, Calendar No. 35,460.) Decided June 1, 1931. Rehearing denied September 10, 1931.

Bill by McClintic-Marshall Company, a Pennsylvania corporation, against Ford Motor Company, a Delaware corporation, and others to establish and enforce a mechanic's lien. James B. Clow & Sons, a foreign corporation, and others filed cross-bills to establish mechanics' liens. Bill by Labadie Brothers Company, a copartnership, against same defendants to establish a lien. Consolidated by stipulation before hearing. Decree for plaintiff and cross-plaintiffs. Defendant Ford Motor Company appeals. Reversed.

*Wilkinson, Lowther & O'Connell,* for plaintiff and defendant, cross-plaintiff Otis Construction Company.

*Charles F. Delbridge* and *W. Leo Cahalan* (*William P. Foster,* of counsel), for plaintiff Labadie Brothers Company.

*Longley & Middleton,* for defendant Ford Motor Company.

*Bryant, Lincoln, Miller & Bevan,* for defendant, cross-plaintiff Ray Sand & Gravel Company.

*Colby, Berns & Costello,* for defendant, cross-plaintiff P. F. Wynne Cartage Company.

*Griffin, Heal & Emery,* for defendant, cross-plaintiff Kalman Steel Company.

*Angell, Turner, Dyer & Meek,* for defendant, cross-plaintiff James B. Clow & Sons.

*Payne & Payne,* for defendant, cross-plaintiff H. H. Dickinson Company.

*Abraham J. Levin, in pro. per., amicus curiæ.*

Potter, J. The Ford Motor Company, a corporation, engaged in manufacturing in Fordson, in 1925 desired a grade separation at Eagle avenue—to construct an underpass 121 feet wide under the yard of the Pennsylvania, Ohio & Detroit Railroad, the tracks of the Pere Marquette Railroad, and the land of the city of Detroit, department of street railways—to enable its employees and others to reach its plant more easily, quickly, and safely. It entered into contracts in writing with the Pere Marquette Railroad Company, the Pennsylvania, Ohio & Detroit Railroad Company, the Pennsylvania Railroad Company operating the Pennsylvania, Ohio & Detroit Railroad, and with the city of Detroit, department of street railways, for the acquisition of the right to make this grade separation; and subsequently entered into a contract in writing with John M. Blair, doing business as the Blair Construction Company, to build this underpass and grade separation. Blair entered upon the work, making many contracts for material, but before the job was completed, disputes arose between Blair and the Ford Motor Company, and the Ford Motor Company rescinded the contract and took over the work. A large number of claims for liens were filed by subcontractors and materialmen, including plaintiff; about 60 suits were commenced against Blair in the circuit court for Wayne county, in which the Ford Motor Company was garnisheed; several cases were commenced in justice's court against Blair in which the Ford Motor Company was named as garnishee defendant, and other litigation ensued. A bill was filed by plaintiff to declare and enforce its lien; various other lien claimants named in the bill as defendants filed answers and cross-bills to establish, declare, and enforce claims of lien filed

by themselves. The Ford Motor Company filed motions to dismiss these bills and cross-bills upon the ground the property upon which a lien was claimed was not lienable and answered the bill of complaint and the several cross-bills filed. An arbitration agreement between Blair and the Ford Motor Company was entered into, a hearing had, and an award filed by the arbitrators awarding Blair $437,294.77. This case was brought on for hearing, referred to William C. Markley, a circuit court commissioner, who, September 23, 1930, filed findings herein to which exceptions were taken, and subsequently heard before the circuit court and a final decree entered sustaining the liens. The Ford Motor Company appeals.

The bill of complaint describes three parcels of land, parcel number one, being owned by the Ford Motor Company, a corporation; parcel number two, being owned by the Pennsylvania, Ohio & Detroit Railroad Company; and parcel number three owned by the city of Detroit, department of street railways (described in the bill of complaint as the Detroit United Railroad, a Michigan corporation). The lands, and the interests of the Ford Motor Company therein, occupied by the right of way and structures incident to the Eagle avenue grade separation, are described in different ways by claimants. Though there is no uniformity in description, they all attempt to describe, in different ways, the interest of the Ford Motor Company in the right of way and the grade separation incident thereto. The bill of complaint alleges, ''the owners of said property being desirous of making a separation of grades of the railroad crossings through said property, did enter into a contract with John M. Blair, doing business as Blair Construction Company, for the separa-

tion of said grades and the erecting of viaducts and crossings thereunder." No contract, such as alleged in the bill of complaint, was entered into by the owners of the lands upon which this grade separation was made. The grade separation affects the lands of the Pere Marquette Railroad Company, the Pennsylvania, Ohio & Detroit Railroad Company, the city of Detroit, department of street railways, and the operating rights of the Pennsylvania Railroad Company. None of these parties entered into contract with Blair for the construction of this grade separation. They assumed no responsibility for damages resulting from its building, maintenance, and operation. On the other hand, the railroad companies above named, owners of the lands crossed by the grade separation, granted to the Ford Motor Company the right to construct the same at its own expense; the Ford Motor Company agreeing to keep, save, and bear harmless the owners of the lands from any loss or damage resulting from the building, maintenance, and operation of such grade separation.

The mechanics' lien law (3 Comp. Laws 1929, § 13101 et seq.) is framed upon the theory that those who perform work or furnish material which enters into and enhances the value of improvements on real estate are entitled to a preferred claim against and a lien upon the specific property presumably bettered by the performance of such labor and the furnishing of such materials; the security of attaching creditors and mortgagees being so enhanced in value thereby that they are not prejudiced.

The statute, 3 Comp. Laws 1929, § 13101, under which a lien is claimed, provides:

"Every person who shall, in pursuance of any contract, express or implied, written or unwritten,

existing between himself as contractor, and the owner, part owner or lessee of any interest in real estate, build, alter, improve, repair, erect, ornament or put in, or who shall furnish any labor or materials in or for building, altering, improving, repairing, erecting, ornamenting or putting in any house, building, machinery, wharf or structure, or who shall excavate, or build in whole, or in part, any foundation, cellar or basement for any such house, building, structure or wharf, or shall build or repair any sidewalks or wells or shall furnish any materials therefor, and every person who shall be subcontractor, laborer, or materialman, perform any labor or furnish materials to such original or principal contractor, or any subcontractor, in carrying forward or completing any such contract, shall have a lien therefor upon such house, building, machinery, wharf, walk or walks, wells, foundation, cellar or basement, and other structures, and its appurtenances, and also upon the entire interest of such owner, part owner or lessee in and to the lot or piece of land, not exceeding one-quarter section of land, or if in any incorporated city or village, not exceeding the lot or lots upon or around or in front of which such improvement is made, to the extent of the right, title and interest of such owner, part owner or lessee at the time work was commenced or materials were begun to be furnished by the contractor under the original contract, or by the subcontractor who furnishes or is furnished with any labor or material in the performance or execution of such subcontract and also the extent of any subsequent acquired interest of any such owner, part owner or lessee.''

This statute came before the court of appeals of the sixth circuit, Judges Taft, Lurton, and Severens, in *Pennsylvania Steel Co.* v. *J. E. Potts Salt & Lumber Co.*, 11 C. C. A. 11 (63 Fed. 11). The

court placed its decision upon the construction of the statute. It said:

"In most of the statutes of the several States, the subject of the lien is localized within restricted limits; in others, it is of an extended character; and in some; railroads are expressly mentioned. We are not disposed to question the proposition that such statutes, though they are in contravention of the common law, should be fairly and liberally construed; but we cannot extend them beyond the bounds of the purpose of the legislature, as gathered from the words employed. Upon general principles of construction, we do not think that the words 'other structure,' following, as they do, in the Michigan statute, such limited and localizing words as 'house, building, machinery, wharf,' can reasonably be held to include a railroad. This conclusion appears to us to be strongly fortified by the restriction of the lien in the latter part of the section to 'the lot or piece of land not exceeding one quarter section of land, or if in a village not exceeding the lot or lots' on which the improvement is made. Giving all these considerations their just weight, it seems clear to us that the complainant has no lien, and therefore that his suit must fail.

"It is suggested by counsel for complainant that the statute gives an independent lien upon the 'structure,' and a further one upon the land upon which it is built. We do not find it necessary to decide this point, or whether, if it is well taken, the statement of lien which was filed would support the claim of a lien upon the material composing the structure; for we are of the opinion that the structure for which the complainant furnished the material is not such a one as the statute contemplates, and it is only for material furnished for such a purpose that a lien is afforded."

In *Detroit Trust Co.* v. *Railway,* 159 Mich. 442, suit was brought to foreclose a mortgage. Defendants Praether Engineering Company, J. H. Kusell, trustee, and the Harrisburg Foundry & Machine Works, filed answers in the nature of cross-bills to enforce mechanics' liens. The question arose as to the construction of the statute. It is said:

"The validity of the claimed mechanics' liens, apart from questions of procedure, depends upon the construction of our statute providing for such liens. See 3 Comp. Laws [1897], § 10710, as amended (Act No. 17, Pub. Acts 1903). This statute came under the consideration of the United States circuit court of appeals, sixth circuit, on appeal from the decree of the circuit court for the eastern district of Michigan, in the case of *Pennsylvania Steel Co.* v. *Lumber Co.,* 11 C. C. A. 11 (63 Fed. 11). The eminent judges who constituted the court, after much consideration and examination of authorities, reached the conclusion that the statute was not intended to give a lien for the materials used in the construction of a railroad. We are satisfied that the court correctly interpreted our statute, so far as concerns materials furnished to become an integral and permanent part of the railway system, and that the property upon which the mechanics' liens are claimed in the instant case is as much outside of the statute as the rails in the case referred to. *Phœnix Iron-Works Co.* v. *Trust Co.,* 28 C. C. A. 76 (83 Fed. 757), and cases cited; *Detroit United Ry.* v. *State Tax Com'rs,* 136 Mich. 96."

(a) Laboring and material men doing work for or furnishing material to railroad companies, such as those above named, are protected under Act No. 100, Pub. Acts 1871 (2 Comp. Laws 1929, §§ 11394 to 11396 inclusive), and not under the mechanics' lien law.

(b) Those who furnish labor and material ·to street railways are protected by Act No. 110, Pub. Acts 1899 (2 Comp. Laws 1929, § 11397), and not under the mechanics' ·lien law.

(c) The enforcement of claims against municipal corporations,· townships, cities, and villages is governed by 3 Comp. Laws 1929, § 14690.

It is claimed, so far as the property of the Pere Marquette Railroad Company, the Pennsylvania, Ohio & Detroit Railroad Company, and the city of Detroit, department of street railways, are involved, the Ford Motor Company had no title. Its rights are said to amount only to a license.

''A license is a permission to do some act or series of acts on the land of the licensor without having any permanent interest in it. 3 Kent's Commentaries, p. 452; *Cook* v. *Stearns,* 11 Mass. 533, 538; *Woodbury* v. *Parshley,* 7 N. H. 237 (26 Am. Dec. 739); *Prince* v. *Case,* 10 Conn. 375 (27 Am. Dec. 675); *Wolfe* v. *Frost,* 4 Sandf. Ch. (N. Y.) 72, 91. It is founded on personal confidence, and therefore not assignable. 3 Kent's Commentaries, p. 452;. Brown on Stat. of Frauds (3d Ed.), § 22. It may be given in writing or by parol; it may be with or without consideration; but in either case it is subject to revocation, though constituting a protection to the party acting under it until the revocation takes place. Where nothing beyond a mere license is contemplated, and no interest in the land is proposed to be created, the statute of frauds has no application, and the observance of no formality is important. But there may also be a license where the understanding of the parties has in view a privilege of a less precarious nature. Where something beyond a mere temporary use of the land is promised; where the promise apparently is not founded on personal confidence, but has reference to the ownership and occupancy of other lands, and is

made to facilitate the use of those lands in a particular manner and for an indefinite period, and where the right to revoke at any time would be inconsistent with the evident purpose of the permission; wherever, in short, the purpose has been to give an interest in the land, there may be a license but there will also be something more than a license, if the proper formalities for the conveyance of the proposed interest have been observed. What that interest shall be called in the law may depend upon the character of the possession, occupancy or use, the promisee is to have, the time it is to continue, and perhaps upon the mode in which the compensation, if any, is to be made therefor. It may be an easement or it may be a leasehold interest; or if the proper grant or demise has not been executed for the creation of either of these, the permission to make use of the land may still constitute a protection to the party relying upon it, until withdrawn." *Morrill* v. *Mackman,* 24 Mich. 279 (9 Am. Rep. 124).

If the Ford Motor Company is a bare licensee, the property of the railroad companies and the city of Detroit, department of street railways, would not for that reason be lienable. *Griffith* v. *Happersberger,* 86 Cal. 605 (25 Pac. 137, 487); *Boise Payette Lbr. Co.* v. *Bickel,* 42 Idaho, 245 (245 Pac. 92, 45 A. L. R. 575); *W. H. Atkinson Co.* v. *John Shields Construction Co.,* 76 N. J. Law, 751 (72 Atl. 81).

What interest in real estate must the Ford Motor Company have to sustain a lien by plaintiff and the other lien claimants herein? Such interest has been defined as,

"Any interest in land which could be sold under execution." *McGreary* v. *Osborne,* 9 Cal. 119.

"Any interest which the party could pass by mortgage." *Montandon & Co.* v. *Deas,* 14 Ala. 33 (48 Am. Dec. 84).

"Any interests in land which is legally subject to mortgage." *Tyler* v. *Birmingham Realty Co.,* 207 Ala. 210 (92 South. 264).

In short, any interest which the owner, part owner, or lessee may have, "provided such interest is such that it can be assigned, transferred, mortgaged or sold under execution." 40 C. J. p. 62.

The right of the Ford Motor Company to construct this grade separation amounted to more than a license. It was in the nature of an easement.

"An easement is a right which one proprietor has to some profit, benefit or lawful use, out of, or over, the estate of another proprietor.  *  *  *  It does not displace the general possession by the owner of the land, but the person entitled to the easement has a qualified possession only, so far as may be needful for its enjoyment." *Morrill* v. *Mackman, supra.*

·"An easement is a liberty, privilege, or advantage without profit, which the owner of one parcel of land may have in the lands of another; or to state it from the opposite point of view, it is a service which one estate owes to another, or a right or privilege in one man's estate for the advantage or convenience of the owner of another estate." 19 C. J. p. 862.

Its right is to occupy and use as a private way the tunnel or underpass constituting the Eagle avenue grade separation as a means for travel and transportation by those coming to or going from its plant. Such right was granted by the railroad companies and the city of Detroit to the Ford Motor Company for the benefit of particular land and for a specific purpose. Its use is limited to such land; *Wood* v. *Woodley,* 160 N. C. 17 (75 S. E. 719, 41 L.

R. A. [N. S.] 1107), and to the purposes of the
grant. Gale on Easements (10th Ed.), pp. 330, 347.

A thing is appurtenant to something else when
it stands in the relation of an incident to a principal
and is necessarily connected with the use and enjoy-
ment of the latter. *Humphreys* v. *McKissock,* 140
U. S. 304, 313 (11 Sup. Ct. 779).

This grade separation or underpass constitutes
an incident to and a part of the right of way granted
to the Ford Motor Company under the tracks and
across the lands of the railroad companies and the
city of Detroit. Its construction and maintenance
was one of the conditions of the grant of such right
of way which would be valueless except in connec-
tion with its use by employees of the Ford Motor
Company and others having occasion to go to and
from its plants. This right of way or easement is
appurtenant to the property of the Ford Motor
Company, which was bound to construct, improve,
and maintain it, but nevertheless it constitutes an
incorporeal right attached to and belonging with
the real property of the Ford Motor Company. It
is annexed thereto, and though it might pass as an
incident to it, it is a species of servitude incapable
of existence separate and apart from the particular
land to which it is annexed. 2 Bouvier's Institutes,
note 1600; 3 Kent's Commentaries (14th Ed.),
p. 419; *Lamb* v. *Railroad Co.,* 150 Mich. 340; *Cad-
walader* v. *Bailey,* 17 R. I. 495 (23 Atl. 20, 14 L. R.
A. 300); 19 C. J. p. 865. Such right of way and the
incidents thereto may not be conveyed by the Ford
Motor Company separate from the land to which
it is appurtenant, but may only be conveyed by it in
connection with such land. It cannot exist separate
from it and cannot be converted into an easement in
gross. *Wood* v. *Woodley, supra;* Jones on Ease-

ments, § 28. Being an appurtenant easement, it is incapable of existence separate and apart from the particular land to which it is annexed. *Cadwalader* v. *Bailey, supra; Reise* v. *Enos,* 76 Wis. 634 (45 N. W. 414, 8 L. R. A. 617); *Houston* v. *Zahm,* 44 Ore. 610 (76 Pac. 641, 65 L. R. A. 799); *Wooldridge* v. *Smith,* 243 Mo. 190 (147 S. W. 1019, 40 L. R. A. [N. S.] 752); *Jarvis* v. *Seele Milling Co.,* 173 Ill. 192 (50 N. E. 1044, 64 Am. St. Rep. 107); *Wood* v. *Woodley, supra; Mahler* v. *Brumder,* 92 Wis. 477 (66 N. W. 502, 31 L. R. A. 695); Jones on Easements, § 28; 3 Kent's Commentaries (14th Ed.), p. 419; 9 R. C. L. pp. 737, 802; 19 C. J. p. 865.

Neither the land of the railroad companies, the city of Detroit, nor the easement granted by them to the Ford Motor Company, is subject to a lien. There are no contractual relations between the railroad companies and the city of Detroit and the principal contractor, or between them and the lien claimants. The grade separation itself was constructed as an incident to and for the security and protection of an easement appurtenant to the property of the Ford Motor Company which cannot be sold, mortgaged, assigned, transferred, or conveyed separate and distinct from the dominant estate to which it is attached. Upon sale or conveyance it would cease to exist.

The claims of the lien claimants must follow the contract. The real estate upon which the lien is here claimed belongs to distinct owners. These several owners did not enter into any contract which may be made the basis of a lien. The only contract entered into is that of the Ford Motor Company: The Ford Motor Company is primarily a private corporation engaged in the manufacturing business. Its entire property is subject to levy and

sale under execution. It entered into no contract with plaintiff or with the other lien claimants. Their contracts were primarily entered into with Blair. Such lien claimants as materialmen seek advantage of the mechanics' lien law, claiming a lien upon the Eagle avenue grade separation. It is this property upon which the lien claimants seek to fasten liens and sell to satisfy their claims from the proceeds of sale.

The Eagle avenue grade separation, although constructed by the Ford Motor Company, is devoted to a *quasi*-public use. Its purpose is to facilitate the speed and safety of the city street cars of the city of Detroit and of persons going to and from the Ford Motor Company's plants. Its uses are *quasi*-public in character. To use this grade separation it must be kept intact. The safety of operation of the several railroads, intrastate and interstate carriers, must be safeguarded. To tear apart this grade separation and divide its constituent parts among the contesting lien claimants would destroy and defeat the purposes of its creation, render it unable to perform its intended functions, and increase the danger of travel of those who use it, and subject them to greater hazards of life and limb. Yet, if the lien claimants have liens to establish and enforce, they must be permitted to do so.

Under our statute, liens attach not only to the buildings erected but to the interest of the party erecting them, the owner, part-owner, or lessee, in the real estate. If the person contracting for the erection of the building has no legal title to the land, the lien attaches to the structure erected. The court may order the sale of the land and buildings together, or the buildings separately, if severable

from the land. *Carland* v. *United Engineering Co.,* 209 Mich. 244.

It is a general rule that buildings erected on the lands of another under leave or license so to do, in furtherance of the purposes of the permissive use and occupation, remain personal property and may be removed by the lessee or licensee at any time during his occupancy, or, if such occupancy or right of occupancy terminate on a contingency, within a reasonable time thereafter. *Kerr* v. *Kingsbury,* 39 Mich. 150 (33 Am. Rep. 362); *Osborn* v. *Potter,* 101 Mich. 300; *VanNess* v. *Pacard,* 2 Peters (U. S.), 137; *Martin* v. *Roe,* 7 El. & Bl. 237 (119 Eng. Rep. Repr. 1235); *Northern Central R. Co.* v. *Canton Co.,* 30 Md. 347; *Antoni* v. *Belknap,* 102 Mass. 193; 2 Taylor, Landlord and Tenant (9th Ed.), § 552. It is in recognition of this principle that, under our statute, buildings may be sold separately from the land in case a lien is established thereon.

A part of the Eagle avenue grade separation was built by the Ford Motor Company upon its own land. Is this land and this part of the grade separation subject to the lien claimed?

There was a single contract entered into with the Ford Motor Company for the construction of the grade separation, which must be considered as one piece of work, and if liens exist in favor of the lien claimants, they must be against the entire structure.

In *Detroit International Bridge Co.* v. *American Seed Co.,* 249 Mich. 289, it is said:

"The bridge and its approaches form one structure. As such, it constitutes a union of highways of Michigan and of Ontario and converts them into one uninterrupted public road."

The Eagle avenue grade separation must be regarded as one structure. It constitutes a union of Mulkey avenue and Miller road. It was constructed primarily for the use of the Ford Motor Company and its employees, but the use to which it is put is substantially the same as if it had been constructed by public authority.

In *Orear* v. *Dierks Lumber Co.*, 188 Mo. App. 729 (176 S. W. 467), an action in equity was brought to restrain defendant from removing the west 40 feet of a three-story brick business building 120 feet in length in Kansas City. The question was whether or not this building was severable. It is said:

"While the law is that where a building is erected on land not owned by the builder and a judgment is obtained and execution had enforcing a mechanic's lien against the building, it may be removed from the ground within a reasonable time. *Ambrose Manfg. Co.* v. *Gapen*, 22 Mo. App. 397; *Deatherage* v. *Sheidley*, 50 Mo. App. 490. But this, as intimated in those cases, cannot be done when it would destroy an entire structure of which it has been made a part. *O'Brien* v. *Pettis & Leithe*, 42 Iowa, 293, wherein it is said, 'The defendants' right depends upon the fact as to whether the building upon which these materials were furnished and work done is so far an independent structure as to be capable of being removed without materially injuring or destroying that which would remain, or whether it is so united with that which was before upon the lot, as to constitute substantially the one building or structure.' "

A mechanic's lien cannot be enforced against a part of an entire building. *Leidel* v. *Bloeser*, 77 Mo. App. 172; *Wright* v. *Cowie*, 5 Wash. 341 (31 Pac. 878); *O'Brien* v. *Pettis & Leithe*, 42 Iowa, 293.

Liens in the abstract are nonexisting. A lien that is unenforceable is a nullity. The right to enforce a lien by sale of the property to which it attaches is its essential characteristic. "The lien abstractly is nothing, its consequences and results are everything." *Vulcanite Paving Co.* v. *Philadelphia Rapid Transit Co.*, 220 Pa. 603 (69 Atl. 1117, 17 L. R. A. [N. S.] 884).

See, also, *Vulcanite Portland Cement Co.* v. *Allison,* 220 Pa. 382 (69 Atl. 855).

There are limitations on the right to a lien.

(a) The mechanics' lien law does not by its terms extend to claims against the property of railroad companies, street railway companies, or municipalities.

(b) A lien may attach only to interests in real estate capable of alienation as separate and distinct entities.

(c) The right of way granted to the Ford Motor Company by the several railroad companies and by the city of Detroit was a grant upon conditions of an easement.

(d) These conditions of the grant were complied with, the grade separation constructed, and the easement is now appurtenant to the land of the Ford Motor Company.

(e) This easement is not lienable because not capable of mortgage, sale, or alienation separate and distinct from the land to which it is appurtenant. Attached, it is a valuable appurtenance; detached, it ceases to exist.

(f) The grade separation is one structure, incapable of division without destroying it and thwarting the purposes of its creation and existence.

(g) As such structural unit this grade separation may not be disintegrated, and its constituent ele-

ments separately sold, because not severable from the easement.

It follows that none of the property herein involved is lienable. Decree reversed, and the bill and cross-bills dismissed, with costs.

Clark, McDonald, Sharpe, North, and Fead, JJ., concurred with Potter, J. Wiest, J., concurred in the result. Butzel, C. J., did not sit.